489 P.2d 1249

Robert Martinez AROS, Petitioner,

v.

INDUSTRIAL COMMISSION of Arizona, Respondent,

Tucson Warehouse ando Transfer Company, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 555.

Court of Appeals of Arizona, Division 1.

Oct. 26, 1971.

Rehearing Denied Dec. 22, 1971.

Davis & Eppstein by Robert W. Eppstein, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Courtney L. Varner, Phoenix, for respondents employer & carrier.

KRUCKER, *Chief Judge.*

The case before us is a petition for a writ of certiorari from an award of the Industrial Commission of Arizona denying the reopening of petitioner's claim.

The issue before this court is simply an evidentiary dispute. The court has reviewed the entire file and sees no need to recite all of the facts of the accident.

Petitioner's sole contention is that the expert medical evidence of the two doctors who testified at his hearing supports a conclusion that claimant has need of further psychiatric examination and evaluation.

 Where the result of an injury is not obvious, such as the loss of a limb or external lesion, medical testimony is necessary to establish the injury and the extent thereof, Buckhalter v. Industrial Commission, 12 Ariz.App. 467, 472 P.2d 78 (1970); Lowry v. Industrial Commission, 92 Ariz. 222, 375 P.2d 572 (1962); Parnau v. Industrial Commission, 87 Ariz. 361, 351 P.2d 643 (1960), and the court will not substitute its opinion for that of the Commission in resolving conflicts in the expert testimony. *Buckhalter,* supra; Frizzell v. Industrial Commission, 6 Ariz.App. 293, 432 P.2d 152 (1967). Where the evidence is in conflict *or different inferences may be drawn therefrom,* findings of fact of the Commission *will not be disturbed unless its conclusion is* wholly unreasonable. Malinski v. Industrial Commission, 103 Ariz. 213, 439 P.2d 485 (1968); Books v. Industrial Commission, *92 Ariz. 302, 376 P.2d 769 (1962);* Fendell v. Industrial Commission, 89 Ariz. 180, *359 P.2d 988 (1961).*

 The Commission's finding that petitioner's condition is stationary is contrary to the evidence presented and the award

should be set aside to provide petitioner additional psychiatric evaluation and care.

Both doctors who testified at the hearing agreed that petitioner is exhibiting symptoms of nervousness and anxiety of an inorganic basis as a result of the industrial accident in question. The doctors further agree that these symptoms are very real and could be limiting the man's ability to work. They agree that further medical evaluation is suggested and their only point of conflict is the nature of the further treatment. Dr. Morton Aronoff's opinion was that following the internal medical consultation "the next step would have been some psychiatrist." Dr. Harold W. Kohl observed the petitioner's symptoms of nervousness and anxiety but suggested that had petitioner been his patient "I probably would have attempted to treat him like I treat many other people with these symptoms, and successfully so, with counseling, discussion and the help of certain drugs."

The agreement of the doctors as to petitioner's need for further medical evaluation is demonstrated by the following testimony:

"Q On that [December 3, 1969] examination did you [Dr. Kohl] find anything other than nervousness and anxiety, which would account for the stomach problems and nausea that were complained of?

A No, I did not.

\*　　\*　　\*　　\*　　\*　　\*

Q First of all, I will take these symptoms in groups. Do you have any opinion whether the symptoms of anxiety and nervousness are organic in basis or a functional basis, using functional there, as perhaps, psychological?

A I don't believe that his symptoms are on an organic basis. His symptoms of nervousness and anxiety were on an organic [sic; should be *in*organic] basis.

Q It would be within the realm of a psychiatrist to provide us with the medical opinion as to whether they are on a functional basis?

A I would certainly think it would be within the realm of psychiatry to do this.

\* \* \* \* \* \*

"Q Dr. Kohl, my question is this: Supposing that in addition to what you found when you examined him, that in addition to the things you noted, the symptoms and nervousness and so forth to the extent that you noted them, you also knew that he had, during the period of time prior to you [sic] seeing him, he had tried to go to work and that his nervousness and nausea, particularly, which seems to coincide with the headaches and weakness on the left side to some extent, had prevented him from working so that he missed work because of this nausea, and that he was going to the Southern Arizona Mental Health, and had been going and seeing the case workers down there over a period of some months, and that he was feeling that he was beginning to get some idea of what was bringing on this anxiety and so forth. Now, if those symptoms had existed to that degree at that time, would you have felt that psychiatric evaluation would have been recommended?

MR. VARNER: I will have the same objection.

THE REFEREE: Same ruling.

THE WITNESS: I don't really think so. I think that at least, assuming that I knew all these things that you just said, and with the findings that I have had on the examination, I would think that this patient is not psychotic; that *he has a reasonable amount of nervousness and anxiety,* which is *probably a result of the injury, as severe as it was.* But I would not think that this probably was a psychiatric problem per se. I would probably have attempted to give him, had he been my patient, and had he been under my care, *I probably would have attempted to treat him like I treat many other people with these symptoms, and successfully so,*

*with counseling, discussion and the help of certain drugs."* (Emphasis supplied)

\* \* \* \* \* \*

"Q These symptoms that we are talking about, from anxiety and nervousness, nausea, feeling of weakness, have you seen these before in patients, this type of thing?

A Definitely so, yes.

Q Are they real?

A They are real complaints on an emotional basis.

Q Can they limit a man's ability to work?

A Yes, they can."

Dr. Morton Aronoff, when questioned regarding Mr. Aros' complaints, replied:

"At that time [when he examined Aros] I phrased it this way. He [Aros] had vague complaints in his upper abdomen. He had radiating pain in his abdomen. He felt he was—he was very upset about this matter. He felt that this was related to his electrical burns that he had several years prior to this, and he felt sincerely that he had something wrong with his insides. He felt something was destroyed inside him.

He had these feelings that as a result of his injuries something was wrong with him which we did not pick up, and we did not know of, and Dr. Wong had just released him from the hospital, because he investigated his kidneys, his gall bladder and all that, and he couldn't find anything wrong with him. But still this gentleman felt there was something wrong with him and he was worrying himself sick about it.

So I felt, at that time, that maybe an internal medical consultation might reassure him that there was nothing wrong, because there was nothing wrong as far as I could see. But despite all the reassurance we could give this man, he was

convinced there was something wrong with him.

Q Do you believe this is on a psychosomatic basis?

A It is my opinion that he has psychosomatic complaints which would be in keeping with all this, yes. He has anxieties, he is an anxious type of individual, and he would somatize his complaints into actual symptomatology of pain and troubles in his stomach, back and so on.

Q *Do you believe, under the circumstances, psychiatric evaluation would be warranted or advisable?*

A *Oh, yes, I think so.* It would do no harm whatsoever. May do him an awful lot of good." (Emphasis supplied)

This court is of the opinion that where uncontradicted medical testimony indicates the need for further medical treatment, the claimant is entitled to receive such treatment. A.R.S. § 23–1021 provides that the injured employee shall be entitled to receive "such medical, nurse and hospital services and medicines * * * as are provided by this chapter." The Arizona Supreme Court in Lowman v. Industrial Commision, 54 Ariz. 413, 418, 96 P.2d 405, 407 (1939), also supported an injured employee's right to medical treatment:

"If she [petitioner] sustained an injury by accident arising out of and in the course of her employment as found by the commission, although not compensable because the injury caused no temporary or permanent disability, still she should have free medical attendance and medicine if such were necessary."

The award is therefore set aside.

HOWARD and HATHAWAY, JJ., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120 subsec. E.