670 P.2d 420

Donnell M. EAST, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Pete King Corporation, Respondent Employer,

CNA Insurance Company, Respondent Carrier.

Donnell M. EAST, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

B.C. Enterprises, Ltd., Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 2833.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 30, 1983.

Jack Levine, P.C. by Jack Levine, Phoenix, for petitioner.

James A. Overholt, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Peter C. Kilgard, Phoenix, for respondent employer B.C. Enterprises, Ltd. and respondent carrier.

Jennings, Strouss & Salmon by Steven C. Lester, Phoenix, for respondent employer Pete King Corp. and respondent carrier CNA Ins. Co.

## OPINION

JACOBSON, Chief Judge.

In this review of an award of the Industrial Commission, we are faced with the determination of whether the medical evidence supports the administrative law judge's finding that the claimant's present physical problems are related to a post-industrial injury accident and if so, whether such a finding legally requires that a petition to reopen be denied.

The claimant, Donnell M. East, has a long history of recurrent left shoulder dislocations. They first appeared in 1966, when he injured his shoulder in a motorcycle accident which required surgery. In 1967, the claimant again dislocated his shoulder while swimming.

In 1971, while employed by respondent Pete King Corporation, he again injured his shoulder while hanging drywall. This industrial injury was accepted for workmen's compensation benefits and following surgery in which a pin was inserted in the shoulder, the claim was closed as an unscheduled 10% permanent disability. It is this claim that the claimant seeks to reopen here.

Following the 1971 surgery, the claimant experienced no problems with his shoulder and returned to his occupation as a drywall hanger. He continued in this occupation for several employers until 1975, when, while riding as a passenger in an automobile, he was involved in a serious accident which injured his shoulder and his back. All parties agree that this auto accident was a non-industrial responsibility. As a result of this accident, he sustained a compression fracture of the T–12 vertebra and surgery was again performed on his shoul-

der in the spring of 1976. The back injury and surgery resulted in the claimant losing approximately a year from work. Apparently, the 1976 surgery to his shoulder did not result in a complete stabilization and he began to experience dislocations and pain although he returned to work hanging drywall.

In 1979, while employed by respondent B.C. Enterprises, which is insured by the State Compensation Fund, the claimant injured his knee which required surgery in early 1980. Following surgery to his knee, the claimant testified that his knee would give away and he would fall, hurting his left shoulder.

The instability to the left shoulder increased to such an extent that in October, 1980, he suffered a total dislocation while turning in his sleep.

In November, 1981, the claimant filed a petition to reopen the 1971 industrial injury and filed a request for hearing pursuant to A.R.S. § 23–1061(J) in regard to the 1979 industrial knee injury. These two matters were consolidated for hearing, the claimant contending basically that the present instability of his left shoulder was an industrial responsibility.

Medical testimony was received from Dr. Howard Aidem, who had been the claimant's treating physician since 1966 and had performed all the shoulder surgeries, and Dr. Walter V. Edwards.

Dr. Aidem testified that, in his opinion, the claimant's present instability was the result of all the injuries the claimant had received to his left shoulder and that the 1971 industrial injury was a contributing factor to that instability. Dr. Edwards, on the other hand, was of the opinion given the successful stabilization of the left shoulder following the 1971 industrial injury, that the present instability to the claimant's shoulder was the direct and proximate result of the 1975 auto accident and the failure of the 1976 surgery to stabilize the left shoulder.

The administrative law judge adopted the opinion of Dr. Edwards and denied the peti-

tion to reopen the 1971 claim against Pete King Corporation and denied relief under A.R.S. § 23–1061(J) against B.C. Enterprises. The claimant timely perfected review of that decision in this court.

■ Although the claimant has sought review of the award denying him additional benefits under A.R.S. § 23–1061(J) against B.C. Enterprises, neither claimant's opening nor reply brief raises any issues concerning the validity of this portion of the award. Under these circumstances, the review of that portion of the award is deemed abandoned, *See Minton v. Industrial Commission,* 90 Ariz. 254, 367 P.2d 274 (1961), and the award as to B.C. Enterprises is affirmed.

■ The claimant's basic contention in regard to the denial of the petition to reopen the 1971 injury is that the administrative law judge erred in disregarding the causation testimony of Dr. Aidem, that is, that the 1971 industrial injury is a substantial contributing cause of the present shoulder instability. However, the administrative law judge, as a trier of fact is entitled, when viewing the evidence as a whole, to resolve the question of medical causation in light of any reasonable inference that can be drawn from the medical testimony. *Aros v. Industrial Commission,* 15 Ariz.App. 547, 489 P.2d 1249 (1971). Both the medical evidence and the claimant's testimony that he experienced no problems with his shoulder following the 1971 industrial injury until the 1975 auto accident fully supports the administrative law judge's finding that the 1975 auto accident was the proximate cause of plaintiff's present instability problem.

■ Assuming, for the purposes of argument, that the medical testimony of both doctors is susceptible of the inference that the 1971 industrial injury, together with all other pre-1975 injuries, caused a pre-disposition for the shoulder to dislocate, is that pre-disposition a sufficient causative factor to impose industrial liability for a condition proximately caused by a non-industrial injury? We believe not.

In *O'Donnell v. Industrial Commission,* 125 Ariz. 358, 609 P.2d 1058 (App.1979), we had occasion to discuss the relationship of the injured worker's activity in breaking the chain of causal relationship where the resultant problems were the direct and natural result of the initial industrial injury, but would not have occurred except for the engaged in activity. In *O'Donnell*[1] we held that where the subsequent injury is the direct and natural result of the initial industrial injury, the claimant's activity will not break the causation chain unless that activity is unreasonable under the circumstances.

■ The *O'Donnell* analysis is not applicable here. There is no testimony that the present instability of claimant's shoulder is a direct and natural result of the 1971 injury. Rather, the testimony supports the conclusion that the direct and natural result of the 1971 accident was a stabilized shoulder which theoretically would have continued in that condition *but for* the intervening auto accident. Moreover, the 1971 injury played no role in causing that accident to occur. Under these circumstances, where the resulting injury is the result of an occurrence which has no causal relationship to the original injury, that new injury cannot legally be the consequence of the original injury. *Wallace v. Judd Brown Construction Co.,* 269 Minn. 455, 131 N.W.2d 540 (1964). No liability attaches.

Award affirmed.

BROOKS and OGG, JJ., concur.

---

1. *O'Donnell* involved a worker who, because of a previous industrial knee injury, was unable to kneel to perform his work as a cement mason and therefore bent over, causing back problems.