682 P.2d 453

Michael D. DUTTON, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Arizona Nursery, Respondent Employer,

Fidelity & Casualty Company of New York, Respondent Carrier.

No. 1 CA–IC 3003.

Court of Appeals of Arizona, Division 1, Department D.

April 12, 1984.

Law Offices of Richard E. Taylor by Richard E. Taylor, Phoenix, for petitioner.

Sandra A. Day, Chief Counsel, Phoenix, for respondent The Industrial Com'n of Ariz.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for respondents.

## OPINION

HAIRE, Presiding Judge.

In this review of an Industrial Commission award denying a reopening, the precise issue is whether it is a defense to reopening that an industrially related con-

dition and subsequent nonindustrial activity combined to cause a new injury. Because we find that under the facts of this case it is not a defense, the award is set aside.

In a compensable industrial injury in April 1979, the petitioner (claimant) herniated a disc at L4–5. His treating neurosurgeon, Philip Carter, M.D., performed a microdiscectomy and subsequently discharged the claimant with a 10% permanent impairment. Before closing the claim, the carrier rehabilitated the claimant to work as a locksmith. In July 1981, the claim was closed with the recommended permanent impairment, but with no loss of earning capacity award because of the claimant's earning capacity as a locksmith.

The claimant went to work as a self-employed locksmith. However, his work made his back symptoms worse. In December 1981, he requested permission from the carrier to see a doctor. The carrier sent him to an orthopedic surgeon, Ronald D. Suiter, M.D. The claimant gave Dr. Suiter a history of the gradually worsening symptoms, but also of a recent incident which resulted in severe exacerbation of claimant's pain. The precipitating incident involved kneeling and pushing against a drill while drilling a safe door. Dr. Suiter diagnosed a disc protrusion and recommended rest.

Although the claimant attempted to lessen his activities, he was unable to follow Dr. Suiter's recommendation for complete rest because he was self-employed. His symptoms persisted. In April 1982, he returned to the surgeon who treated his 1979 industrial injury, Dr. Carter. A CT scan showed a recurrent herniated disc at L4–5. Dr. Carter related this condition to the previous industrial injury.

The claimant petitioned to reopen his claim. Reopening was denied by the carrier, and hearings were scheduled before the Commission's administrative law judge. Pending the scheduled hearings, consulting neurosurgeon Paul W. LaPrade, Jr., M.D., examined the claimant.

Drs. Suiter, Carter, and LaPrade all testified at the hearings. They agreed that the claimant probably had a recurrent disc herniation. They agreed that this condition had two causes: the industrial injury, which weakened the back and increased susceptibility to re-injury in the area of L4–5, and the claimant's subsequent work activity. They differed as to the exact effect of the safe drilling incident. Dr. Suiter thought that this incident caused the disc to rupture. Dr. LaPrade thought that the rupture may have begun before this episode, but that it was the most significant event—the proverbial straw that broke the camel's back. Dr. Carter thought that all of the claimant's bending at work aggravated his condition and could not say if the recurrent herniation was a sudden or gradual change.

The administrative law judge issued the award denying reopening. His dispositive findings state:

"6. It was the position of the applicant that his industrial injury of 1979 was the cause of his problems at the time of his Petition to Reopen and that he had not suffered a new injury but had only suffered an exacerbation of his old injury. It was the position of the carrier that the applicant had sustained a new injury within the meaning of the Workmen's Compensation Law during the safe-drilling event and that therefore he was not entitled to a reopening of his claim for new, additional or previously undiscovered disability or condition.

\*     \*     \*     \*     \*     \*

"8. The case of *New Pueblo Constructors v. Industrial Commission*, 115 Ariz. [236], 238 (Ct.App.), [sic] 564 P.2d 925 (1977) appears to be controlling under the facts of this case. In that case the medical evidence was insufficient to determine whether a nonindustrial incident caused disk extrusion or whether a later industrial episode did so. In the case of Mr. Dutton, the only evidence is that an incident took place on December 2, 1981, while he was engaged in drilling a safe and while he was not an employee

of the defendant employer and that this incident caused a marked increase in his symptoms and brought him to an acute condition. This testimony is not sufficient to establish that the applicant's 1979 injury was the *legal* cause of his acute condition and therefore the applicant has failed to meet his burden of proof in establishing that he has sustained a new, additional or previously undiscovered disability or disease. Therefore, his Petition to Reopen filed on April 22, 1982, should be dismissed." (Emphasis added).

The claimant requested administrative review, alleging that the administrative law judge had "mis-interpreted the facts presented, as well as the law with respect to reopenings under the present factual circumstances." The award was summarily affirmed and the claimant has sought review by this court.

On review, the claimant argues that the administrative law judge erroneously applied *New Pueblo Constructors v. Industrial Commission*, 115 Ariz. 236, 564 P.2d 925 (App.1977) to this case. The employer and carrier deny that the wrong standard of legal causation was applied, and also assert that the administrative law judge simply resolved a medical conflict and found that the industrial injury did not cause the recurrent herniation.

The administrative law judge did not expressly or impliedly resolve any medical conflict. Rather, he found that the safe drilling incident caused the acute exacerbation and therefore is the legal cause of the condition. This may be an implicit rejection of Dr. Carter's opinion that the recurrent herniation was a gradual change, but it is not a finding that the industrial injury contributed nothing to the recurrent herniation. If it were, the evidence would fail to support it.

■ The administrative law judge relied on *New Pueblo Constructors, supra,* to support this legal causation finding. This case established two principles. First, medical evidence is insufficient to prove industrial causation if it is equally probable

that a nonindustrial accident caused the condition. Second, a compensable aggravation of a pre-existing condition requires a worsening of that condition, not merely a pain producing incident.

Neither principle directly applies to this case. The medical evidence established joint causation. The temporal sequence is reversed: the pre-existing condition is the industrial condition and the nonindustrial incident followed it. Furthermore, the medical evidence establishes without conflict that the safe drilling incident unquestionably worsened the pre-existing industrial condition.

In finding 6 the administrative law judge reveals a crucial error in his analysis by referring to the distinction between an exacerbation of an old condition and a new injury. The administrative law judge apparently concluded, and the employer and carrier argue on review, that despite the industrial injury's partial contribution, the safe drilling incident was the legal cause of the recurrent herniation because the condition is a new injury.

■ The recurrent herniation undoubtedly is a new injury. *See, e.g., Caganich v. Industrial Commission*, 108 Ariz. 580, 503 P.2d 801 (1972). But this alone is no defense to a reopening if the pre-existing industrial injury directly contributes to the new condition. *See O'Donnell v. Industrial Commission*, 125 Ariz. 358, 609 P.2d 1058 (App.1980). In *O'Donnell*, the claimant had an industrial knee injury, returned to work but had to stoop because of the knee injury, and this stooping caused a back injury. Reopening was denied because the back injury was a new injury and the responsibility of another industrial carrier. The court rejected this defense:

"[W]here the subsequent activity giving rise to a subsequent injury or aggravation related to the primary injury is work related, the claimant may well have two avenues open to him—a reopening of the primary injury or a new claim based upon the work-related activity.... And although the [administrative law judge]

may conclude that the facts before him would justify a new claim injury being filed, this alone does not authorize him to deny compensability for a reopening and thus substitute his judgment as to the appropriate remedy for that of the claimant."

125 Ariz. at 362, 609 P.2d at 1062.

■ *O'Donnell* not only rejects the "new injury" defense, but defines the test for limiting the compensable consequences of an industrial injury. First, a direct causal relationship must be established between the initial industrial injury and the subsequent condition. Second, when the claimant's conduct contributes to the incident causing the subsequent injury, his conduct must have been reasonable in light of his knowledge of his previous physical condition. 125 Ariz. at 360–61, 609 P.2d 1060–61; *accord,* 1 A. Larson, *Workmen's Compensation Law,* § 13.12 (1978).

■ Both elements are satisfied in this case. The claimant's testimony and that of the medical witnesses establish a direct causal connection between the initial industrial injury and the subsequent recurrent herniation. Despite the permanent impairment from the industrial injury, it was found that the claimant had the residual capacity to work as a locksmith. He reherniated the disc while pushing a drill doing this work. This was within months of the closing of the claim. Without question claimant's conduct was reasonable under the circumstances, and the carrier does not contend otherwise.

The employer and carrier rely on authority requiring the industrial injury to be the "producing" cause. *See Ramonett v. Industrial Commission,* 27 Ariz.App. 728, 558 P.2d 923 (1976); *Makinson v. Industrial Commission,* 134 Ariz. 246, 655 P.2d 366 (App.1982). *Ramonett* involved a claimant whose industrial injury made him aware of a pre-existing non-industrial condition. *Makinson* involved a claimant who perpetuated her initially industrially related symptoms because of a pre-existing personality disorder. Neither of these cases is inconsistent with the compensable conse-

quences principles set forth in *O'Donnell, supra.*

We have also considered this court's recent decision in *East v. Industrial Commission,* 137 Ariz. 315, 670 P.2d 420 (App. 1983). *East* involved a 1981 petition to reopen a 1971 shoulder injury award. The evidence disclosed intervening injuries to the claimant's shoulder between 1971 and 1981, leading to substantial questions as to whether the 1981 condition was causally related (from both a legal and medical standpoint) to the 1971 injury. Upon conflicting medical evidence, the administrative law judge adopted the testimony of the medical witness who found no causal relationship, and denied the petition to reopen. On review, this court affirmed the denial upon the well established principle that it is the duty of the administrative law judge, not this court, to resolve questions raised by conflicting medical testimony relating to causation.

Since all three medical witnesses in this proceeding testified that the claimant's condition was causally related to the prior industrial injury, the court's *holding* in *East* is not relevant. The carrier, however, relying upon dicta in *East,* urges that the showing by medical testimony that the prior industrial injury caused a "predisposition" for the subsequent recurrence of the disc herniation was insufficient to support a reopening. This dicta in *East* is as follows:

"Assuming, for the purposes of argument, that the medical testimony of both doctors is susceptible of the inference that the 1971 industrial injury, together with all other pre-1975 injuries, caused a pre-disposition for the shoulder to dislocate, is that pre-disposition a sufficient causative factor to impose industrial liability for a condition proximately caused by a non-industrial injury? We believe not."

670 P.2d at 422.

Although the above-quoted statement in *East* might have some validity based upon the attenuated facts set forth in *East,* we

do not find the court's reasoning in support of this dicta persuasive as a general proposition of law. The determination of causation questions in workmen's compensation law is difficult enough when the determination is based upon actual medical testimony and actual facts with attendant nuances and value judgments. The time to decide complex causation questions as hypothesized in *East* is better left to the time when it becomes necessary to decide such questions based upon actual facts and medical testimony in a proceeding before this court. In any event, even if we assume that the attenuated facts in *East* would have negated a finding of direct causation because of both temporal and supervening injury occurrences, no such facts are presented here.

For the foregoing reasons the award is set aside.

KLEINSCHMIDT and OGG, JJ., concur.