735 P.2d 1384

Jerry C. MERCANTE,
Petitioner Employee,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Georgia-Pacific Corporation,
Respondent Employer,

Georgia-Pacific Corporation,
Respondent Carrier.

No. 1 CA–IC 3457.

Court of Appeals of Arizona,
Division 1, Department B.

April 9, 1987.

262

Davis & Eppstein, P.C. by Robert W. Eppstein, Tucson, for petitioner employee.

Dennis P. Kavanaugh, Chief Counsel, Industrial Com'n of Ariz., Phoenix, Lewis and Roca by R. Kent Klein, Merton E. Marks, R. Todd Lundmark, Phoenix, for respondent employer and carrier.

## OPINION

KLEINSCHMIDT, Judge.

The claimant has had intermittent low back problems that began thirty years ago when he was in the service. In 1979, while he was working as a truck driver for Georgia-Pacific, he bent over to unstrap cargo and felt something snap in his left buttock. He soon developed pain in both buttocks and in the low back which was diagnosed as lumbrosacral strain with underlying osteoarthritis. After a brief hospitalization and two weeks of conservative treatment, the claimant returned to regular work without difficulty.

In early 1980, however, the symptoms of the injury recurred while the claimant was merely walking. He spent two more weeks in the hospital and was disabled for an additional four weeks. He then returned to his regular work. After this second incident, Georgia-Pacific accepted compensability for the 1979 injury and the 1980 recurrence of symptoms and subsequently terminated the claim without permanent impairment.

The claimant continued to work for Georgia-Pacific until 1982 when the company closed its local business. Thereafter, he worked as a truck driver for several different employers. The lifting his jobs required ranged from light to heavy. In June of 1984, the claimant awoke and felt excruciating pain in his right leg while rolling out of bed. Testing indicated a herniated disc. The claimant's treating neurosurgeon removed the disc in early July and operated again later the same month to clear up an infection which had developed.

■ After the first surgery but before the second, the claimant filed a petition to reopen which Georgia-Pacific denied. The claimant protested the denial. The record does not reflect whether the claimant ever filed new injury claims against any of the intervening employers. *See generally Cotton v. Industrial Commission*, 26 Ariz. App. 58, 546 P.2d 35 (1976) (claimant should file both a petition to reopen and a new injury claim and request consolidation when the appropriate remedy is uncertain). The scheduled hearing only concerned reopening.

At the hearing, the claimant testified that since 1980 he had consistently felt a slight twinge on his right side. His normal work for Georgia-Pacific occasionally caused low back pain. Stretching exercises and aspirin afforded some relief, and when the pain was more severe he took Tylenol # 4. He also testified that since 1980 he had not missed any work or required any additional medical treatment because of the pain. He denied that anything unusual at work precipitated the June 1984 herniation and speculated that he caused it by twisting in bed.

At the same hearing, Thomas Norton, M.D., the neurosurgeon who had removed the herniated disc, testified that, to a reasonable medical probability, the herniation was unrelated to the 1979/80 industrial injury. He admitted that it was possible that the industrial injury had weakened the disc, but denied that this was a probable consequence of the industrial injury.

The parties do not agree on how to characterize the opinion of Bertrand G. Kwasman, M.D., the orthopedic surgeon who examined the claimant for Georgia-Pacific. The claimant says that the doctor testified that the 1979/80 industrial injury was a significant contributing cause of the rupture of the disc. Georgia-Pacific asserts that the doctor in essence merely said that the claimant's spine was the sum total of his life experiences. Our review of the record leads us to conclude that both parties' descriptions are too favorable to their respective positions. We resolve the dispute by our own characterization of the evidence. Dr. Kwasman testified that the disc ruptured in 1984 because interdiscal pressure increased when the claimant attempted to get out of bed. According to Dr. Kwasman, this incident was but the last card that caused the proverbial house of cards to collapse. The disc was predisposed to rupture at that time because prior "insults" to its supporting envelope had weakened it. These insults were inflicted by something more than routine activity.

Dr. Kwasman thought that the incident in the service and the 1979/80 industrial injury qualified as significant insults because they required hospitalization. In addition, the claimant's work following the 1979/80 industrial injury probably produced insults as well. The doctor believed that the underlying osteoarthritis also contributed to the predisposition to herniate.

Following the hearing, the administrative law judge issued the award granting reopening. He found a medical conflict and resolved it in favor of Dr. Kwasman. Without additional discussion, he found that the claimant had established the causal relationship required for reopening. In addition, he awarded benefits from the date the claimant filed the petition to reopen.

Both parties requested administrative review. The claimant contended that he had reserved his assertion that the effective date of reopening could be earlier than the filing date of the petition to reopen and that the administrative law judge's specific finding that he was entitled to benefits from the date of filing the petition to reopen might have preclusive effect. He accordingly requested that the administrative law judge either delete this specific finding or grant a continued hearing to allow him to show why he was entitled to benefits predating the filing of the petition to reopen. Georgia-Pacific contended, among other things, that Dr. Kwasman's opinion was legally insufficient to justify reopening. The administrative law judge summarily affirmed his award. The claimant then perfected this special action. Georgia-Pacific noticed its appearance and requested affirmative relief. *See generally* Rule 10(f), Rules of Procedure for Special Actions. We will .address the request for affirmative relief first. Our resolution of that issue obviates the necessity to address the issue the claimant raised.

Georgia-Pacific asserts that Dr. Kwasman's opinion on causation was legally insufficient for two reasons. First, it argues that Dr. Kwasman did not demonstrate that the June 1984 herniation was the "direct and natural result" of the 1979/80 industrial injury. Second, because Dr. Kwasman's opinion established that intervening industrial insults contributed to the June 1984 herniation, Georgia-Pacific contends that the successive injury doctrine applies so that the appropriate remedy is a new injury claim, not a reopening. If the employee's condition is found to be a new injury, Georgia-Pacific will not be responsible for compensation.

## DIRECT AND NATURAL RESULT

■ The question we must address is whether the evidence will support the finding that the herniation was the direct and natural result of the industrial injuries that occurred while the petitioner was working for Georgia-Pacific. Under the workers' compensation law, a primary industrial injury—and by that we mean the first work-related injury affecting any given part of the body that an employee suffers—is compensable even though the employee's fault or negligence causes it. Because the employer takes the employee as he is, an injury is compensable even if the industrial incident only partially contributes to it. *See and compare L.B. Price Mercantile Co. v. Industrial Commission,* 43 Ariz. 257, 30 P.2d 491 (1934) and *Caganich v. Industrial Commission,* 108 Ariz. 580, 503 P.2d 801 (1972). However, not every consequence of such a primary industrial injury is compensable. "The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is *the direct and natural result* of a compensable primary injury." 1 A. Larson, *Workmen's Compensation Law* § 13.11 at 3–348.91 (1985) (emphasis added). Several Arizona cases have adopted this rule. *See Dutton v. Industrial Commission,* 140 Ariz. 448, 682 P.2d 453 (App.1984); *East v. Industrial Commission,* 137 Ariz. 315, 670 P.2d 420 (App.1983); *O'Donnell v. Industrial Commission,* 125 Ariz. 358, 609 P.2d 1058 (App.1979); *Allen v. Industrial Commission,* 124 Ariz. 173, 602 P.2d 841 (App. 1979); *American Smelting & Refining Co. v. Industrial Commission,* 25 Ariz.App. 532, 544 P.2d 1133 (1976).

■ It is settled that a claimant's unreasonable intentional conduct may constitute a superceding cause of a new condition so as to preclude compensation for it. *O'Donnell v. Industrial Commission*, 125 Ariz. 358, 609 P.2d 1058 (App.1979). That, however, is not the situation which confronts us. The question we must answer is whether compensability may be denied even though the claimant's intervening conduct is reasonable where the cause of the subsequent injury is too attenuated to be the direct and natural consequence of the primary injury. This proposition was raised in dicta in *East v. Industrial Commission*, 137 Ariz. 315, 670 P.2d 420 (App. 1983). In that case, the claimant suffered two non-industrial injuries to his shoulder. He then suffered a third shoulder injury which was industrial in nature. His claim was accepted and was later closed as an unscheduled disability. The claimant again injured his shoulder in a non-industrial automobile accident and required surgery. After surgery, the shoulder never stabilized and when the problem became too acute, the claimant filed a petition to reopen his industrial claim. We ultimately held that reopening was improper because no medical testimony supported it. We went on to observe in dicta, however, that even if the medical evidence could be construed to support an inference that the industrial injury caused a predisposition for injury to the shoulder, such a predisposition was not a cause sufficient to justify compensation.

Shortly after *East* was decided, it was construed in *Dutton v. Industrial Commission*, 140 Ariz. 448, 682 P.2d 453 (App. 1984). In *Dutton*, the claimant herniated a disc at work. Following rehabilitation, the carrier closed the claim without permanent disability. Later, while self-employed, the claimant reherniated the disc. All of the medical experts agreed that the initial herniation predisposed the disc to recurrent herniation. We rejected the adoption of a general rule that the creation of a predisposition was insufficient to establish causation for the sake of reopening. We noted the dicta in *East* and said "[e]ven if we assume that the attenuated facts in *East*

would have negated a finding of direct causation because of both temporal and supervening injury occurrences, no such facts are presented here." 140 Ariz. at 452, 682 P.2d at 457. In *Dutton*, we suggested that questions of causation are best left to be decided on the individual facts of each case as they arise.

Larson supports the view that an employment injury may render a subsequent injury compensable even if it is not the actual cause of the accident in question if it has made the body more susceptible to the injury. 1 A. Larson, *Workmen's Compensation Law* § 13.12 at 3–388 to –393. Of all the cases Larson cites for this proposition, only one, *Buehler v. Rose*, 12 A.D.2d 670, 207 N.Y.S.2d 694 (1960), is like the claimant's case in the sense that it involved multiple contributing causes to a subsequent accident. In *Buehler*, an industrial injury and a non-industrial auto accident combined to cause a subsequent fall. The court apportioned responsibility between the industrial and non-industrial injury.

■ We conclude that in some cases the link between a primary injury and a subsequent one may be too attenuated to support reopening. *East* was just such a case because the industrial contribution was extremely weak and the non-industrial contribution was extremely strong. Here, in contrast, Dr. Kwasman's opinion connected the subsequent herniation to specific traumatic insults, only one of which was non-industrial. All of the others were related to the claimant's heavy work for various employers. Only one of these, which Dr. Kwasman termed a "significant insult," occurred while the claimant was working for Georgia-Pacific. The doctor did not say that the subsequent injury would not have occurred but for the 1979/80 injury but said that the subsequent injury was part of a continuum—one card among many in an unstable house of cards.

■ We reject Georgia-Pacific's suggestion that the passage of time alone precludes reopening. "[T]he length of time which elapsed between the original injury and the ... [subsequent injury] is not con-

trolling so long as a causal link between the injury and the ... [subsequent injury] is sufficiently shown." *American Smelting & Refining Co. v. Industrial Commission*, 25 Ariz.App. 532, 534, 544 P.2d 1133, 1135 (1976).

We also reject Georgia-Pacific's argument that the causal connection is too remote because the 1979/80 industrial injury was but one of many incidents that contributed to the predisposition. This argument might be equally applicable to all of the employers. If joint contribution by several work-related incidents attenuated the causal connection between all of the incidents and a subsequent injury, the claimant would be left without a remedy.

■ We therefore conclude that Dr. Kwasman's opinion established a legally sufficient causal connection to support reopening of the 1979/80 claim. Our standard of review compels us to defer to the administrative law judge's resolution of the medical conflict. *State Compensation Fund v. Industrial Commission*, 24 Ariz. App. 31, 535 P.2d 623 (1975).

### APPLICATION OF THE SUCCESSIVE INJURY DOCTRINE

■ Georgia-Pacific contends that the successive injury doctrine precludes recovery against it in this case because the "insults" petitioner sustained to his back while he was working for other employers after leaving Georgia-Pacific's employ were just as much the cause of the ultimate condition as was the injury he sustained while working for Georgia-Pacific. While we agree that in retrospect these "insults" might have satisfied the causation requirement for a new injury claim, we are not surprised that the petitioner simply elected to reopen and to look to Georgia-Pacific. It was while working for Georgia-Pacific that his back trouble became so critical that he was hospitalized on two occasions and it was the work-related activity leading to these hospitalizations that Dr. Kwasman called a "significant" contributing insult. Given these facts and the fact that the successive injury doctrine is primarily a rule of administrative convenience for de-

termining which of several carriers present in the proceedings must bear the loss, we do not believe that the successive injury doctrine should bar recovery in this case. *See Pearce Development v. Industrial Commission*, 147 Ariz. 598, 712 P.2d 445, (App.1985), *modified*, 147 Ariz. 582, 712 P.2d 429 (1985), and *Dutton v. Industrial Commission*, 140 Ariz. 448, 682 P.2d 453 (App.1984).

### EFFECTIVE DATE OF REOPENING

The petitioner incurred expense in connection with this industrial injury prior to the date he filed his petition to reopen. He claims that he made the administrative law judge and counsel for the respondent carrier aware of his contention that acts and omissions of the carrier and the industrial commission delayed the filing of the petition. He further claims that all of the parties believed the question to be premature and that the case proceeded to hearing by agreement on the single issue of whether petitioner's physical condition was related to the 1979 accident.

In its response, Georgia-Pacific does not address these contentions, It simply argues that A.R.S. § 23–1061(H), the statute which specifies that no benefits are payable for any period prior to the date of the filing of the petition to reopen, applies., *But see Restatement (Second) of Judgments* § 26(1)(a) (1982), which establishes the rule that parties may agree to limit the preclusive effect of a decision.

■ We find that there is nothing in the administrative law judge's findings or elsewhere in the record which will preclude the petitioner from arguing, should he desire to do so, that he is entitled to benefits which predate the filing of the petition to reopen.

It is ordered affirming the award.

CORCORAN, P.J., and GREEK, J., concur.