744 P.2d 475

**DR. PEPPER COMPANY,**
Petitioner Employer,

**Employers Casualty Insurance,**
Petitioner Carrier,

v.

The **INDUSTRIAL COMMISSION OF ARIZONA,** Respondent,

**Dennis A. Clark, Respondent Employee.**

No. 1 CA–IC 3634.

Court of Appeals of Arizona,
Division 1, Department D.

Oct. 13, 1987.

Jennings, Strouss & Salmon by Ronald H. Moore, Kevin J. Worthen, and Jefferson Lankford, Phoenix, for petitioner employer and petitioner carrier.

Dennis P. Kavanaugh, Chief Counsel, Phoenix, for respondent The Indus. Com'n of Ariz.

Treon, Strick, Lucia & Aguirre, P.A. by John Aguirre, Phoenix, for respondent employee.

## OPINION

HAIRE, Chief Judge.

In this review of an Industrial Commission award granting claimant's petition to reopen, we consider two issues:

(1) Did the administrative law judge err in finding that the carrier's disclaimer of liability for "underlying" degenerative problems applied only to those conditions that preceded claimant's initial industrial injury?

(2) Does the successive injury doctrine prohibit reopening when claimant elects not to file a new injury claim though the facts would support either remedy?

The initial industrial injury to claimant's right knee occurred in March 1979 while he was employed by the Dr. Pepper Company.[1] After surgery to remove torn cartilage, claimant continued to suffer from pain, swelling, and a feeling of instability in his knee. Dr. Brainard, claimant's physician, diagnosed chondromalacia and post-traumatic arthritis. He performed further surgery, but claimant's problems persisted.

By February 1984, claimant's condition was stationary. The carrier issued a notice of claim status, a notice of supportive medical maintenance benefits, and a notice of permanent disability, each containing the following disclaimer: "Carrier denies liability for underlying degenerative medical problems to the right leg including possible underlying rheumatoid arthritis." Claimant did not protest these notices; in fact, he signed a waiver of his right to challenge their contents.

In January 1985, claimant reinjured his right knee while working part-time for Manpower Temporary Services. He caught his heel slightly on a raised area of the floor, and, because of the instability in his knee, when he misstepped, the knee went into hyperextension. Claimant suffered immediate, severe pain and required treatment in the form of a knee immobilizer and anti-inflammatory medication.

Claimant filed a petition to reopen the claim for his 1979 injury. He did not file a new injury claim. The carrier denied the petition to reopen, and claimant requested a hearing. At the hearing, Dr. Brainard was permitted to testify, over the carrier's objection, that the degenerative conditions in claimant's knee were causally related to the 1979 injury and subsequent surgeries. The administrative law judge issued his decision to grant reopening, finding that claimant's knee condition constituted a new, additional, or previously undiscovered disability, that the 1985 injury occurred primarily because of the instability in claimant's knee, and that claimant was do-

---

1. Hereinafter, we will refer to Dr. Pepper Co. and its workers' compensation carrier, Employ-  ers Casualty Insurance, collectively, as "carrier."

ing what he was expected to do when the injury occurred.

## DISCLAIMER

The carrier argues that principles of *res judicata* preclude the Commission from holding it liable for any degenerative condition in claimant's right leg. It contends that, because an unprotested notice of claim status has the same effect as does a final award of the Commission, the administrative law judge should not have allowed claimant to "retry" the issue of whether his degenerative knee problems were related to the 1979 injury. *See Govan v. Industrial Commission*, 23 Ariz.App. 261, 532 P.2d 533 (1975).

This argument rests on the assumption that claimant was seeking to reopen for conditions that amounted to "underlying degenerative medical problems to the right leg." The administrative law judge found, however, that "underlying" degenerative problems referred only to conditions that might have preceded the 1979 injury, whereas claimant's petition was based on degenerative conditions that had been caused by the 1979 injury.

The carrier complains that the record fails to support this limitation on the effect of its disclaimer. It contends that there was no evidence that claimant suffered from any degenerative knee problems prior to 1979. There would have been no reason, it asserts, to disclaim liability for conditions that did not exist. The carrier reasons that because the only degenerative conditions from which claimant has ever suffered are those that were caused by the 1979 injury, those are undoubtedly the conditions for which it disclaimed liability.

We agree with the administrative law judge's interpretation of the disclaimer and find substantial evidence in the record to support it. In December 1983, Dr. George, who had examined claimant several times at the carrier's request, reported the results of his latest evaluation. He noted that a consulting rheumatologist had also examined claimant and had tentatively diagnosed early rheumatological disease. Furthermore, he reported that a recent bone scan had revealed arthritic changes in claimant's left knee, as well as the right. Finally, Dr. George cautioned the carrier as follows:

> "Clinically, it would appear that the patient's principle [sic] difficulty with the knee relates to a post traumatic arthrosis which would be an industrial responsibility.
>
> "However, I would consider the possible diagnosis of a rheumatologic condition an important factor in this particular case as this condition may become more manifest at a later date and could ultimately require extensive medical benefits. I know of no specific relationship between trauma and the diagnosis of a rheumatologic condition and I would not consider any treatment for the patient's possible underlying rheumatoid arthritis an industrial responsibility."

We think it apparent that the disclaimer was a product of this report and that the "underlying" degenerative medical problems for which the carrier disclaimed liability were the same conditions that concerned Dr. George—conditions which, by their very nature, could not be causally related to claimant's 1979 industrial injury.

We are persuaded that the administrative law judge's interpretation of the disclaimer was correct. We conclude, therefore, that the disclaimer did not preclude claimant from establishing the causal connection between his degenerative knee problems and the 1979 industrial injury.

## SUCCESSIVE INJURY DOCTRINE

The carrier next argues that reopening should have been denied because the evidence established that claimant had sustained a new injury, for which, under the successive injury doctrine, claimant's 1985 employer alone should have been liable. In advancing this argument, the carrier relies on *Pearce Development v. Industrial Commission*, 147 Ariz. 598, 712 P.2d 445 (App.), *approved in part and vacated in part*, 147 Ariz. 582, 712 P.2d 429 (1985), and *Professional Furniture Service v. Industrial Commission*, 133 Ariz. 206, 650

P.2d 508 (App.1982). Neither case compels the result that the carrier seeks.

In *Pearce*, we examined the successive injury doctrine in light of *Professional Furniture Service, O'Donnell v. Industrial Commission*, 125 Ariz. 358, 609 P.2d 1058 (App.1980), and *Dutton v. Industrial Commission*, 140 Ariz. 448, 682 P.2d 453 (App.1984). In *Professional Furniture Service*, we set aside an award granting reopening. In the other two cases, we set aside awards denying reopening. We found three factors useful in distinguishing the cases upon their facts:

"(1) whether the employee's subsequent activity is an independently compensable injury by accident;

(2) whether the first injury caused this subsequent activity to be injurious; and

(3) whether this subsequent activity is industrially related." *Pearce*, 147 Ariz. at 602, 712 P.2d at 449.

The carrier focuses upon these three factors and, finding the instant case most similar to *Professional Furniture Service*, concludes that the same result should obtain here. The claimant in *Professional Furniture Service* initially injured his knee at work. This claim was eventually closed with a permanent disability. He returned to work and reinjured his knee when he slipped on an oil spill. He petitioned to reopen the first claim and also filed a new injury claim. The carrier with responsibility for the earlier injury denied the petition to reopen. The carrier with responsibility for the later injury accepted the claim, but later closed it with a permanent disability no greater than that previously awarded.

The claimant protested both the denial of the reopening and the closure of the new claim. At a consolidated hearing, the medical testimony revealed that both injuries had contributed to the claimant's need for continuing medical benefits. The administrative law judge granted reopening and also found that the new injury claim should not have been closed because the claimant's condition was not stationary. On review, we set aside the reopening, holding that where two industrial claims were involved, the fact that "the first injury had created a condition which was then acted upon by the second injury to result in claimant's current disability" was not sufficient to impose liability on the first injury carrier. 133 Ariz. at 208–09, 650 P.2d at 510–11.

As we noted in *Pearce*, *Professional Furniture Service* presents the strongest case for applying the successive injury doctrine. First, a specific new injury contributed to the condition. Second, the first injury did not cause the second to occur. Third, the new injury was industrial. *Pearce*, 147 Ariz. at 603, 712 P.2d at 450.

We agree with the carrier that the instant case is similar to *Professional Furniture Service* in that the evidence would have supported a new injury claim. However, this alone does not authorize an administrative law judge to deny reopening if the preexisting industrial injury directly contributes to the new condition. *Dutton*, 140 Ariz. at 450, 682 P.2d at 455.

The three factors identified in *Pearce* do not represent a "test," which, if satisfied, would bar reopening. In *O'Donnell*, however, we did set forth a test for limiting the compensable consequences of an industrial injury—a test that the carrier apparently concedes has been met in this case. First, claimant must demonstrate a direct causal relationship between the initial industrial injury and the subsequent condition. Second, when claimant's conduct has contributed to the subsequent condition, the conduct must have been reasonable in light of his knowledge of his previous physical condition. *O'Donnell*, 125 Ariz. at 360–61, 609 P.2d 1060–61. Furthermore, we stated:

"[I]t is apparent that where the subsequent activity giving rise to a subsequent injury or aggravation related to the primary injury is work related, the claimant may well have two avenues open to him—a reopening of the primary injury or a new claim based upon the work-related activity. Many factors may weigh in the choice of which avenue to trod.... Be that as it may, the *initial choice of how a claimant wishes to proceed, by seeking a reopening, by seeking a new injury status, or both, is primarily the*

*responsibility of the claimant, not the hearing officer.* And although the hearing officer may conclude that the facts before him would justify a new claim injury [sic] being filed, this alone does not authorize him to deny compensability for a reopening and thus substitute his judgment as to the appropriate remedy for that of the claimant." *Id.* at 362, 609 P.2d at 1062 (emphasis added).

■ The successive injury doctrine is a rule of nonapportionment, which, as between potentially liable parties[2], imposes full liability on the one responsible for the last industrial injury. *Vishinskas v. Industrial Commission,* 147 Ariz. 574, 711 P.2d 1247 (App.1985). It is a rule of liability preference; it does not create a defense against liability. *Pearce,* 147 Ariz. at 602, 712 P.2d at 449.

■ The rule has no application, for example, where the second injury is nonindustrial. *Klosterman v. Industrial Commission,* 1 CA–IC 3538 (Ariz.App. July 30, 1987). Similarly, it has no application where only one of several potentially liable parties is present in the proceedings. *Mercante v. Industrial Commission,* 153 Ariz. 261, 735 P.2d 1384 (App.1987). In *Mercante,* we refused to set aside a reopening on the ground that the facts might also have satisfied the standard for a new injury claim. We characterized the successive injury doctrine as "a rule of administrative convenience for determining which of several carriers *present in the proceedings* must bear the loss." *Id.* at 266, 735 P.2d at 1389 (emphasis added).

■ We have repeatedly stated that when it appears that an incident may be either a new injury or causally related to a previous claim, the employee would be well advised to file both a new claim and a petition to reopen. *See, e.g., Cotton v. Industrial Commission,* 26 Ariz.App. 58, 61, 546 P.2d 35, 38 (1976). However, when a claimant elects to seek reopening only, and the evidence establishes that he has sustained a new, additional, or previously undiscovered disability causally related to his industrial injury, the successive injury doctrine will not bar reopening.

The award is affirmed.

FROEB, P.J., and EUBANK, J., concur.

---

2. We recognize that the rule also applies where a single carrier is responsible for both injuries and the claimant, who has pursued both remedies, attempts to have his compensation based on his wage at the time of the earlier injury.

*See Caganich v. Industrial Commission,* 108 Ariz. 580, 503 P.2d 801 (1972).