167 P.3d 719

**SUN VALLEY MASONRY, INC.,**
**Petitioner Employer,**

**St. Paul Fire & Marine Insurance Co., Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Roland W. Jones, Respondent Employee.**

No. 1 CA–IC 06–0092.

Court of Appeals of Arizona, Division 1, Department D.

Oct. 4, 2007.

Steven C. Lester, P.C. by Steven C. Lester, Phoenix, Attorneys for Petitioners Employer and Carrier.

Laura L. McGrory, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Taylor & Associates, PLLC by Dennis R. Kurth, Phoenix, Attorneys for Respondent Employee.

JOHNSEN, Judge.

¶ 1 This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review granting reopening. Petitioner Sun Valley Masonry, Inc. and its carrier argue the administrative law judge ("ALJ") erred by granting the request by Roland W. Jones to reopen without finding that (1) his current condition requiring active care was the direct and natural result of the original injury and (2) the existence of a substantial causal relationship between his original injury and his current condition. We conclude that because the claim at issue represented a continuing deterioration of Jones's initial injury, the heightened proof requirements urged by Sun Valley do not apply. Because reasonable evidence in the record supports reopening of the claim, we affirm.

## I. Jurisdiction and Standard of Review.

¶ 2 This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(2) (2003), 23–951(A) (1995), and Arizona Rules of Procedure for Special Actions 10.[1] In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings but review questions

---

1. We cite the current versions of applicable statutes throughout this decision because no statutory revisions material to this decision have since occurred.

of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App.2003). We consider the evidence in the light most favorable to upholding the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App.2002).

## II. Procedural and Factual History.

¶ 3 Jones has worked as a stone mason all of his life. During his 16 years at Sun Valley, he often performed flooring work that required him to work on his knees. At 58, his knees were frequently sore, but prior to December 2003, he never had experienced knee problems that required medical treatment.

¶ 4 On December 29, 2003, Jones was repairing a flagstone patio. When he stood to get mortar, he felt his right knee pop. He went to a medical center and was diagnosed with a knee strain. He missed a few days of work and had some physical therapy, but then returned to his regular work. After the December 2003 incident, his knee was sore, but that was not unusual for the type of work he performed.

¶ 5 Jones has another medical condition that requires regular checkups with his family physician. That physician's notes of May 12 and June 30, 2004, both state that he was experiencing soreness on the inside of his knee just below the kneecap. Jones testified that this was the usual amount of soreness he experienced from the heavy work he performed.

¶ 6 On July 10, 2004, as Jones descended a ladder, his foot slipped, and he hyperextended his right knee. Jones testified that he had pain in the same place, on the inside of his knee, but that it was much worse than before and his knee was swollen. He returned to the medical center, where he was x-rayed and again diagnosed with a knee sprain.

¶ 7 Jones filed a workers' compensation claim, which was accepted for benefits. He received physical therapy and anti-inflammatory medication, but when his knee did not improve, he was referred to Mark Greenfield, D.O. On October 9, 2004, Dr. Greenfield performed arthroscopic surgery to repair a med-

ial meniscus tear. Jones testified that while the pain in his knee improved following surgery, the knee eventually deteriorated to its presurgery condition. On January 14, 2005, Dr. Greenfield released Jones to full work duty, and his claim was closed with a two percent scheduled permanent partial impairment of the right lower extremity.

¶ 8 At the time of the July 2004 injury, Jones was a "working foreman" at Sun Valley. He set stone and also ran a crew. After his July 2004 injury, Jones never was able to resume his regular work duties at Sun Valley. He testified that until November 2005, he usually ran the crew; after that, his knee gave out and he quit working altogether.

¶ 9 Jones's family physician referred Jones to Dennis L. Armstrong, M.D. for his continuing knee complaints. After Jones saw Dr. Armstrong on November 21, 2005, he filed a petition to reopen his July 2004 industrial injury claim, alleging the existence of a new, additional and/or previously undiscovered medical condition related to that claim. Sun Valley's carrier denied the petition for benefits, and Jones timely requested a hearing, at which testimony was taken from him, Dr. Armstrong and Neal Rockowitz, M.D., an independent medical examiner retained by the carrier.

¶ 10 Following the ICA hearing, the ALJ entered an award adopting Dr. Armstrong's medical opinion and granting reopening. On administrative review, the ALJ summarily affirmed the award, and Sun Valley brought this special action.

## III. Discussion.

¶ 11 Workers' compensation benefits are paid to a person who suffers an injury "arising out of and in the course of his employment." A.R.S. § 23–1021(A) (2006). *See Martinez v. Indus. Comm'n*, 192 Ariz. 176, 180, ¶ 17, 962 P.2d 903, 907 (1998) ("industrial accident need not be the sole cause of an injury, so long as it is *a* cause"). In order to reopen a workers' compensation claim, the claimant must establish the existence of a new, additional, or previously undiscovered condition and a causal relationship between that condition and the prior

industrial injury. *See* A.R.S. § 23–1061(H)(2006); *Kaibab Indus. v. Indus. Comm'n,* 196 Ariz. 601, 608, ¶ 22, 2 P.3d 691, 698 (App.2000). It is the claimant's burden to present sufficient evidence to support reopening. *See Hopkins v. Indus. Comm'n,* 176 Ariz. 173, 176, 859 P.2d 796, 799 (App. 1993). When the causal connection between the condition and the prior industrial injury is not readily apparent, it must be established by expert medical testimony. *Makinson v. Indus. Comm'n,* 134 Ariz. 246, 248, 655 P.2d 366, 368 (App.1982).

¶ 12 Jones presented the following testimony from Dr. Armstrong:

Q. Then he gets hurt on July 10th of '04 coming down the ladder, and has the menisectomy—the arthroscopic menisectomy by Dr. Greenfield in October as a consequence of that injury?

A. [Dr. Armstrong] That's correct.

Q. He's then rated with a two percent impairment, as a result of that menisectomy, right?

A. Correct.

Q. Did the partial menisectomy, in the medial compartment, have any effect on the underlying degenerative condition, the osteoarthritis?

A. Well, mechanically it allows more bony contact, so it does alter the stresses on the surface of the medial compartment, yes.

Q. Now, considering that and considering that the surgery was accepted as a part of the July 10, '04 claim, and that claim was closed with permanent impairment, is it more likely than not, in your opinion, that his present condition, which requires either a menisectomy or a total knee [replacement], was caused or, at least, contributed to by the injury of July 10th of '04 and the surgery?

A. I feel that we have to include the concept that there was an influence from that injury. We can't exclude that influence, I don't believe.

Q. Some contribution?

A. Yes. [2]

¶ 13 Adopting Dr. Armstrong's testimony "and drawing all reasonable inferences in favor of" Jones, the ALJ concluded that Jones's claim should be reopened for treatment of the knee. The ALJ found that Jones was entitled to medical benefits and temporary total or temporary partial disability benefits as provided by law from December 8, 2005, "until his condition is determined to be medically stationary."

¶ 14 Sun Valley argues that Jones's claim should not have been reopened because under cases analyzing what are called "compensable consequences," he failed to show that his current need for active medical treatment was the "direct and natural result" of his July 2004 industrial injury and failed to show a "substantial causal relationship" between the original injury and the current condition. It urges us to impose these proof requirements on any person seeking to reopen a claim pursuant to A.R.S. § 23–1061(H).

¶ 15 As noted above, an employee is entitled to reopen a claim upon proof of a "new, additional or previously undiscovered temporary or permanent condition," A.R.S. § 23–1061(H), which has a causal connection to the initial injury, *Kaibab Indus.,* 196 Ariz. at 608, ¶ 22, 2 P.3d at 698. Under this rule, for example, a claim is reopened when, after the original claim, a worker's condition "progresses into complications more serious than the original injury." 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 10.02, at 10–3 (2007). In such event, "the added complications are of course compensable." *Id.*

¶ 16 Under the "compensable consequences" doctrine, a claim may not be reopened unless the claimant can show that the current condition is the "direct and natural result" of the original injury and that there is a substantial causal relationship between original injury and the current condition. *See DKI Corp./Sylvan Pools v. Indus. Comm'n,* 169 Ariz. 357, 361, 819 P.2d 943, 947 (App.1991) (distinguishing "between the test for determining the compensability of the

---

2. Sun Valley presented contradictory testimony from Dr. Rockowitz, who testified that any active medical treatment Jones required was solely the result of underlying osteoarthritis rather than the result of the July 2004 injury.

initial injury and that for determining how far the range of compensable consequences of that injury may be carried"), *vacated in part on other grounds,* 173 Ariz. 535, 539, 845 P.2d 461, 465 (1993); *Lou Grubb Chevrolet, Inc. v. Indus. Comm' n,* 174 Ariz. 23, 26, 846 P.2d 836, 839 (App.1992) (claimant must show both that the current condition is the direct and natural result of the original injury and also that it is substantially related).

¶ 17 The compensable consequences doctrine applies to cases in which the claimant's subsequent condition, though in some way causally related to the original injury, is "produced by an independent nonindustrial cause." Larson, *supra,* § 10.01, at 10–2 to–3; *see generally Arizona Workers' Compensation Handbook* ("Handbook") § 11.2.3, at 11–7 to–8 (Ray J. Davis, et al., eds.; 1992 and Supp.2006). Thus, although a "subsequent progression" of an original compensable injury may be sufficient to support an application to reopen, when the current condition is not simply the subsequent deterioration of the original compensable condition, it is not compensable unless the claimant shows it is the "direct and natural result" of the original injury. *See generally* Larson, *supra,* § 10.01, at 10–2 to–3; Handbook, *supra,* § 3.4.1, at 3–19 to–22.

¶ 18 Sun Valley argues that because the reopening statute, A.R.S. § 23–1061(H), requires proof of a "new, additional or previously undiscovered temporary or permanent condition," any person seeking to reopen a claim must link the current condition with the original injury by proving that it is the direct and natural result of the original injury and that a substantial causal relationship exists between the two. In support, it cites a number of cases that discuss the range of compensable consequences of a primary industrial injury.

¶ 19 In *Mercante v. Industrial Commission,* 153 Ariz. 261, 263, 735 P.2d 1384, 1386 (App.1987), for example, the claimant sustained a 1979 industrial injury and was diagnosed with a lumbosacral strain and underlying osteoarthritis. He received brief conservative treatment and returned to his regular work. *Id.* The following year, the symptoms recurred without apparent cause, and the claimant received additional brief conservative treatment before again returning to regular work. *Id.* Approximately four years later, the claimant experienced a sudden onset of excruciating pain in his right leg when he tried to get out of bed. He was diagnosed with a herniated disc and underwent surgery. *Id.*

¶ 20 The claimant filed a petition to reopen the 1979 injury claim, and the accepted medical testimony established that his herniated lumbar disc was predisposed to rupture "because prior 'insults' to its supporting envelope had weakened it." *Id.* These insults included a military service-related injury, the 1979 industrial injury, continued heavy work, and the claimant's underlying osteoarthritis. *Id.* at 263–64, 735 P.2d at 1386–87. The ALJ found the partially industrially related predisposition was sufficient to establish the requisite causal connection for reopening. *Id.* at 264, 735 P.2d at 1387.

¶ 21 On appeal, this court recognized that not every consequence of … a primary industrial injury is compensable. "The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is *the direct and natural result* of a compensable primary injury."

*Id.* (quoting 1 Arthur Larson, *Workmen's Compensation Law* § 13.11, at 3–348.91 (1985)). We noted that many of the factors contributing to the claimant's predisposition for a disc herniation were industrially related, and concluded that the medical testimony regarding the claimant's predisposition to further injury following the initial industrial injury was sufficient to satisfy the direct and natural result test and to support reopening. *Id.; see also Dutton v. Indus. Comm'n,* 140 Ariz. 448, 449, 451, 682 P.2d 453, 454, 456 (App.1984) (claimant entitled to reopening based on medical testimony that initial herniation predisposed claimant's disc to additional herniation).

¶ 22 This court also considered the "direct and natural result" standard in *Lou Grubb Chevrolet,* 174 Ariz. 23, 846 P.2d 836. The claimant in that case sustained an industrial injury to his right hand and wrist. *Id.* at 24,

846 P.2d at 837. While undergoing treatment for the industrial injury, the claimant was involved in a nonindustrial automobile accident which aggravated the right hand and wrist injuries and required surgery. *Id.* at 25, 846 P.3d at 838. The ALJ concluded that the claimant was entitled to continuing benefits because "an aggravation or new injury is a compensable consequence of an industrial injury if the industrial injury predisposes a claimant to further injury." *Id.*

¶ 23 On appeal, this court agreed that a "later injury is the 'direct and natural' result of the compensable work injury" if the original injury "predisposes a claimant to further injury." Id. at 26, 846 P.3d at 839. But we also warned that there must in addition be "a substantial causal relationship between the industrial injury and the later disability or need for treatment." *Id.*[3]

¶ 24 In *Karber/Interstate Air v. Industrial Commission,* 180 Ariz. 411, 885 P.2d 99 (App. 1994), the claimant suffered a compensable right knee injury. While receiving treatment, he tripped. In order to protect his injured right knee, the claimant placed his full weight on his left leg. His left leg gave way and he fell, injuring his left knee. The ALJ concluded that the claimant's left knee injury was a compensable consequence of the industrial right knee injury. *Id.* at 412, 885 P.2d at 100. On appeal, this court affirmed, cautioning that although

> medical causation is required, ... it is not the exclusive element in determining whether a substantial causal relationship exists between the work injury and the

later injury. The ALJ ... [must] address legal causation—whether as a matter of policy, the causal connection between the two injuries is strong enough for the ... [subsequent] injury to be a compensable consequence of the industrial injury.

*Id.* at 414, 885 P.2d at 102.

■ ¶ 25 We reject Sun Valley's contention that the "compensable consequences" doctrine, with its attendant additional proof requirements, applies to any case in which a person seeks to reopen a claim. As the cases cited above demonstrate, the doctrine of compensable consequences addresses the relationship between an initial industrial injury and a subsequent condition that manifests after a distinct event, accident or disease that occurs subsequent to the original injury. It is only in such cases that we require a claimant to show the current condition is the direct and natural result of the original compensable injury and that there is a substantial causal relationship between the current need for treatment and the original injury. *See Lou Grubb Chevrolet,* 174 Ariz. at 26, 846 P.2d at 839.

■ ¶ 26 We acknowledge that in some circumstances, there may be a fine line between a reopening request that presents a gradual deterioration of the initial industrial injury (which is compensable without a showing that it is a "direct and natural" result of the original injury) and a reopening request presenting a current condition to which the doctrine of compensable consequences applies.[4] The facts presented by the reopening

---

**3.** This court has recognized various situations where factual causation, though established, was too attenuated to constitute legal causation sufficient to support compensability. In *O'Donnell v. Industrial Commission,* 125 Ariz. 358, 360–62, 609 P.2d 1058, 1060–62 (App.1979), we recognized that a claimant's unreasonable, intentional conduct may constitute a superseding cause of a new condition and preclude compensation. Subsequently, in *East v. Industrial Commission,* 137 Ariz. 315, 317, 670 P.2d 420, 422 (App.1983), we concluded that an attenuated causal connection may not support compensation. In *East,* the claimant sustained two nonindustrial shoulder injuries before a third compensable industrial shoulder injury. *Id.* at 316, 670 P.2d at 421. The shoulder was surgically stabilized, and after the claim was closed, the claimant sustained another nonindustrial shoulder injury and unsuc-

cessfully petitioned to reopen. *Id.* at 316–317, 670 P.2d at 421–22. This court affirmed the denial of reopening and observed that, even if the medical testimony had supported a predisposition to reinjury, causation was too attenuated. *Id.* at 317, 670 P.2d at 422.

**4.** For example, although a gradual deterioration of a condition caused by the original compensable injury is compensable without application of the heightened "natural and direct" standard, *see* Larson, *supra,* at 10–3, a subsequent condition resulting from a predisposition caused by the original injury is subject to the "direct and natural" requirement. *See Mercante,* 153 Ariz. at 265–66, 735 P.2d at 1388–89; *Dutton,* 140 Ariz. at 450–51, 682 P.2d at 455–56. To be sure, our "predisposition" cases seem to say that when

request in this case, however, lie squarely within the authorities that require only proof of a new, additional or previously undiscovered condition and a causal relationship between that condition and the prior industrial injury. *Supra* ¶ 11. According to testimony accepted by the ALJ, the knee pain that Jones experienced was not the result of a subsequent event, injury or other cause. Instead, it was the result of gradual deterioration of the condition that resulted from the original injury.

¶ 27 The ALJ is not required to make findings on all issues raised in a case, as long as he resolves the ultimate issues. *See Cavco Indus. v. Indus. Comm'n,* 129 Ariz. 429, 435, 631 P.2d 1087, 1093 (1981). When this court can determine the factual basis for an ALJ's conclusion and whether it was legally sound, the award is sufficient. *See Post v. Indus. Comm'n,* 160 Ariz. 4, 7, 770 P.2d 308,

311 (1989). In this case, the ALJ resolved the ultimate issue, reopening, and we find the award sufficient for our review.

### CONCLUSION

¶ 28 We find Dr. Armstrong's testimony is sufficient to establish that Jones's July 2004 industrial injury caused or contributed to his present condition. Accordingly, we affirm the award granting reopening.

Concurring: JON W. THOMPSON, Judge, and SUSAN A. EHRLICH, Judge.

---

there is a substantial causal relationship between the current condition and the original injury, if the current condition results from a predisposition caused by the original injury, it necessarily "directly and naturally" results from the original

injury. *Id.; Lou Grubb Chevrolet,* 174 Ariz. at 26, 846 P.2d at 839.