The TRAVELERS INSURANCE COM-
PANY, Appellant,

v.

Mrs. Jettie L. CURTIS, Individually and as Next Friend for Dennis W. Curtis, a minor, Appellee.

No. 15341.

United States Court of Appeals
Fifth Circuit.

June 24, 1955.

Rehearing Denied July 28, 1955.

**828**

David M. Kendall, Jr., Pinkney Grissom, Thompson, Knight, Wright, & Simmons, Dallas, Tex., for appellant.

John C. Cain, Ben H. Lewis, Coffee, Cain, Read & McCracken, Dallas, Tex., for appellees.

Before RIVES, Circuit Judge, and DAWKINS and DE VANE, District Judges.

DAWKINS, District Judge.

Appellant insured the workmen's compensation risk of Vilbig Construction Company (herein called Vilbig), which had a subcontract to furnish dirt and gravel on what is referred to as the Chance-Vought job near Dallas. John Thomas Curtis had an arrangement with Vilbig under which he furnished his own truck and drove it on Vilbig jobs, hauling dirt or gravel as instructed. On February 23, 1954, while traveling from Vilbig's pit to the site of the Chance-Vought job, Curtis was killed in a railroad crossing accident. His widow brought this action, individually and as next friend of her minor son, for benefits under the Texas Workmen's compensation statute, Vernon's Ann.Civ.St. art. 8306, § 1 et seq., alleging diverse citizenship. Appellant's answer took the position that Curtis was not an employee at the time of his death, but was an independent contractor not covered by the statute. The trial was to the judge without a jury and resulted in judgment for appellee, granting the maximum benefits provided in the statute. In its appeal from that judgment, appellant contends that: (1) the evidence adduced shows as a matter of law that Curtis was an independent contractor; and (2) even conceding that he was an employee, the evidence as to his earnings fails to prove appellee's right to anything in excess of the minimum benefits.

■■ The parties agree that in determining whether a particular person is an employee or an independent contractor, the courts of Texas apply the prevailing test of right of control over the details of the work as opposed to the final result.[1] The first specification requires us to determine if the trial judge has correctly applied this principle of law to the facts of the case; and, as we said in the Thibodeaux case (footnote 1), that determination must be made upon consideration of the testimony as a whole.

■ The evidence adduced by appellee consisted of testimony from her major

1. Some of the Texas cases involving this problem are American General Insurance Co. v. Hightower, Tex.Civ.App., 264 S.W.2d 481; Maryland Casualty Co. v. Real, Tex.Civ.App., 244 S.W.2d 865; Elder v. Aetna Casualty & Surety Co., 149 Tex. 620, 236 S.W.2d 611; Halliburton v. Texas Indemnity Insurance Co., 147 Tex. 133, 213 S.W.2d 677; Southern Underwriters v. Samanie, 137 Tex. 531, 155 S.W.2d 359; Southern Surety Co. v. Shoemake, Tex.Com.App., 24 S.W.2d 7; Texas Employers' Insurance Ass'n v. Owen, Tex.Com.App., 298 S.W. 542; Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522. See also Western Casualty & Surety Co. v. Thibodeaux, 5 Cir., 190 F.2d 730; Bartle v. Travelers Insurance Co., 5 Cir., 171 F.2d 469.

son (who had worked with his deceased father) and other truck drivers having similar arrangements with Vilbig. Briefly summarized, it was to the effect that Curtis was hired with his truck when Vilbig had jobs requiring his services; that he operated and maintained his truck at his own expense; that Vilbig's supervisory employees told the drivers when and where to appear with their trucks, when to start hauling, when to stop, how to load, which route to take, where and how to unload, and when to take a "coffee break"; that any drivers who failed to heed these instructions would be discharged or would not be called again; that drivers were often sent from one job to another on the same day; that they were usually paid by the hour for short hauls and by the yard or load for long hauls; that Vilbig did not deduct social security and withholding taxes from their earnings. Appellee's son further testified that he was driving ahead of his father on the day of the accident, along a route designated by Vilbig's foreman. He said they were being paid 60¢ per yard on that particular job.

Appellant's testimony was to the effect that all drivers were hired as independent contractors and that the only instructions given them were those necessary to insure the availability of dirt or gravel at the time and place needed. The owner of a fleet of trucks testified that he often furnished trucks and drivers to Vilbig under similar arrangements and considered them to be his employees, not Vilbig's.

From this testimony the trial judge found that Curtis was "an employee of the Vilbig Company in transferring dirt from its drag line" to its jobs "as that employer chose to direct him." We note the presence of some facts which, standing alone, indicate Curtis was an independent contractor, and we recognize some merit in appellant's argument that the general outlines of the arrangement lend support to its contention. On the other hand, if the testimony of appellee's witnesses is believed, Vilbig had and actually exercised the right of control over virtually every detail of performance by the drivers. After a thorough study of the Texas decisions we are unable to hold that the trial court's finding was clearly erroneous.

The question raised by the second specification arose because of a misunderstanding between counsel. At the beginning of the trial, when the judge asked if counsel desired to make any statements, a discussion ensued as quoted in the footnote.[2] Counsel for appellee interpreted this discussion to be a joint stipulation that the *only* issue in the case was the question of whether Curtis was an employee or an independent contractor,[3] and limited his proof to that point.

---

2. "Mr. Lewis: Judge, I think in agreement with Mr. Grissom that the only point on which we are going to trial in this matter was whether he was an employee or an independent contractor, and we will limit it to that.

"The Court: Yes, all right.

"Mr. Lewis: Because they have admitted the remaining facts.

"The Court: All right.

"Mr. Grissom: May I say, in that connection, if Your Honor please, that we admit we carried the policy of workmen's compensation insurance on the Vilbig Construction Company. And that they gave their notice of appeal and things of that kind. Now—

"The Court: All jurisdiction questions are admitted?

"Mr. Grissom: Yes, all jurisdiction questions.

"The Court: The only fight here is whether he was an employee or an independent contractor?

"Mr. Grissom: Well, that is so far—I know nothing about what he was paid, because it is our position that he was an independent contractor and that he got his own, he took his own money and paid his own social security and all that kind of thing.

"In other words, the only issue from the standpoint of liability of the company is whether or not he was an employee under the terms of the Workmen's Compensation Act. That is true."

3. Paragraph 9 of the complaint alleged that Curtis had worked as a truck driver for substantially five years prior to his death and was receiving $20 per day when killed. The answer pleaded Curtis

At the close of the evidence, the court asked about the amount of wages, and an off-the-record discussion between counsel followed. Counsel for appellant then made the following statement: "If Your Honor please, I am in no position to stipulate about it, because I have no idea how much he could have earned, because he paid his own expenses and depreciation on his truck. He operated an independent business. I wouldn't know what to say."

Thereupon, appellee was allowed to reopen her case, and the deceased's son took the stand again. He stated that he had worked with his father for fifteen years and that at the time of the accident the latter was making approximately $24 per day, usually working five days per week. Appellee herself had testified earlier that Curtis had worked as a hauler with his truck for five and a half years, mostly with Vilbig. Appellant offered no evidence at all as to the length of time Curtis was so employed or the amounts paid him, although it undoubtedly had access to its insured's records of payments to such drivers. The trial judge then granted an award of $9,000, the maximum under the statute.[4]

Appellant now argues that there is nothing in the record from which it can be determined what Curtis spent for the operation and maintenance of his truck, in order to compute his net earnings. It contends that for aught this record shows Curtis might have lost money, and that the court should have limited recovery to the minimum of $9 per week because appellee had not borne the burden of proving herself entitled to more. In support of its argument it cites American General Insurance Co. v. Hightower, Tex.Civ.App., 264 S.W.2d 481.

In the first place we think it might well be held that counsel for appellant had waived this issue by the remarks quoted in footnote 2, particularly in view of his persistence in pursuing exclusively the theory that Curtis "operated an independent business". He failed to produce any evidence which might have helped the trial judge in determining the amount of the award, and we are constrained to express the feeling that his approach had the effect of misleading counsel for appellee and the court. Had he intended to make an issue of the amount of the award, he could easily have expressed that intention clearly at the pre-trial discussion, rather than make the ambiguous remarks quoted.

In any event, we are convinced that the trial court was correct in awarding the maximum benefits. The Texas statute provides three separate methods of determining the average weekly wage,[5]

---

was an independent contractor and specifically denied the allegations of paragraph 9.

4. Article 8306, Section 1 of the statute provides for death benefits in weekly payments of 60 percent of the average weekly wages, but not more than $25 per week nor less than $9 per week, for 360 weeks.

5. " 'Average weekly wages' shall mean:
"1. If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"2. If the injured employee shall not have worked in such employment during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or neighboring place, shall have earned in such employment during the days when so employed.

"3. When by reason of the shortness of the time of the employment of the employee, or other employees engaged in the same class of work in the manner and for the length of time specified in the above Subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly

and the proof clearly makes the *first* method applicable here. Uncontradicted testimony shows that Curtis had been employed as a truck driver hauling dirt and gravel for more than a year prior to his death and made $24 per day, five days a week. By the terms of the statute, this testimony entitled appellee to the maximum benefits.

The opinion in the Hightower case shows that the jury found the injured employee had not worked substantially a year preceding the accident and that there was no employee whose wages could be used as a guide for the calculation required by the *second* subsection of the statutory definition of " 'Average weekly wages' ". For this reason the court held there was nothing upon which the award could properly be based. The case is therefore distinguishable from ours.

■■ Further, we are of the opinion that once a person is held to be an employee, his "wages" are the amounts he is paid by his employer for his work, not his "net profit" from the employment. We think it would not be contended that a carpenter or mechanic required to provide his own transportation to and from work and furnish his own tools should be required to prove and deduct automobile expenses and the cost of tools in order to establish his wages from employment. Having held the judge did not err in finding Curtis was an employee rather than an independent contractor, we perceive no reason to require such proof and deductions here. We have found no other Texas cases mentioning these factors, and the expressions thereon in the Hightower case were not necessary to support the decision. We are therefore unwilling to accept appellant's argument that the Hightower opinion is binding authority for its contention.

The judgment appealed from is

Affirmed.

wages as above defined, it shall be computed by the Board in any manner which may seem just and fair to both parties." Article 8309, § 1.