590 P.2d 977 (1978)
Anthony FILIPPONE, Petitioner,
v.
INDUSTRIAL COMMISSION of Colorado, Robert J. Ore, Director of the Colorado Division of Labor, State Compensation Insurance Fund and Western Paving Construction Company, Respondents.
No. 78-271.
Colorado Court of Appeals, Div. III.
September 14, 1978.
Rehearing Denied October 12, 1978.
Certiorari Denied February 13, 1979.
Maley, Perry & Schiff, P. C., John T. Maley, Denver, for petitioner.
Richard G. Fisher, Jr., Fred B. Dudley, Denver, for respondents State Compensation Ins. Fund and Western Paving Const. Co.
J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., David L. Lavinder, Asst. Atty. Gen., Denver, for respondent Industrial Commission.
STERNBERG, Judge.
The claimant, Anthony Filippone, seeks review of a final order of the Industrial Commission awarding him temporary total disability benefits. He contends that he should have been awarded the maximum compensation under the statute, rather than the $44.33 per week that he was awarded. We agree and set aside the order.
At the time of his injury, Filippone was working as a truck driver for the Western Paving Construction Company, insured by the State Compensation Insurance Fund.
Filippone owned his tractor-trailer. He performed work for Western and others. Under his general agreement with Western, he was to make his fully-manned truck *978 available to Western upon call for purposes of hauling sand, gravel, and similar materials. He was compensated at the rate of $21 per hour for the time he hauled for Western. Western would contact Filippone when work was available. He would then call Western's foreman in the morning to be told where to pick up a load. While in the course of employment with Western, Filippone was injured and filed this claim.
The referee awarded Filippone his medical expenses and $44.33 per week compensation for temporary total disability. The referee found that Filippone worked 9½ hours on the day he was injured; that his "actual" earnings were $7 an hour and that the balance of the $21 per hour was "chargeable" against "maintenance or overhead for the leased tractor-trailer." The referee based the average weekly wage upon the single day in which Filippone was working for Western. This resulted in an average weekly wage of $66.50 and an award of 2/3 of that figure under the statute then in effect, § 8-51-102, C.R.S.1973. On review, the Commission adopted the referee's findings.
The average weekly wage of an injured employee is the basis upon which compensation is computed. Section 8-47-101(1), C.R. S.1973. The term "wages" is defined in § 8-47-101(2), C.R.S.1973, as:
"[T]he money rate at which the services rendered are recompensed under the contract of hire in force at the time of the accident, either express or implied, and shall not include gratuities received from employers or others, nor shall it include the amounts deducted by the employer under the contract of hire for materials, supplies, tools, and other things furnished and paid for by the employer and necessary for the performance or such contract by the employee . . . ." (emphasis supplied)
The referee based his decision that Filippone's "actual" earnings were $7 an hour on Filippone's testimony that if he were being paid $21 an hour, he estimated that about 2/3 of that ($14) was necessary to run the truck, leaving $7 for himself.
The statute specifies what is and what is not to be included in determining the rate of pay, and neither the Commission, nor this court, is empowered to change the plain meaning of a statute. Accordingly, the Commission had no authority to allocate a portion of Filippone's hourly rate of compensation to "maintenance or overhead" of the truck furnished by the employee, rather than the employer.
Cases from other jurisdictions, e.g., Texas Employers Insurance Ass'n v. Schwarz, 107 S.W.2d 666 (Tex.Civ.App.1937); Pettis v. Industrial Commission, 91 Ariz. 298, 372 P.2d 72 (1962), which reach conclusions contrary to ours are distinguishable on their facts and are based on statutes containing language different than the Colorado statute.
The decision in Travelers Insurance Co. v. Curtis, 223 F.2d 827 (5th Cir. 1955), is more persuasive. There, a deceased employee was earning $24 a day for driving his own truck to haul dirt and gravel for his employer. The insurer contended the employee's widow should have been given the minimum weekly compensation, rather than the maximum, because, after deducting expenses for the truck, there was no evidence of the employee's net earnings.
The court rejected the insurer's contention, stating that:
"[O]nce a person is held to be an employee, his `wages' are the amounts he is paid by his employer for his work, not his `net profit' from the employment. We think it would not be contended that a carpenter or mechanic required to provide his own transportation to and from work and furnish his own tools should be required to prove and deduct automobile expenses and the cost of tools in order to establish his wages from employment."
It is a long-recognized rule that the Workmen's Compensation Act is to be liberally construed to accomplish its humanitarian purpose of assisting injured workers. Mascitelli v. Giuliano & Sons Coal Co., 157 Colo. 240, 402 P.2d 192 (1965); Claimants in re Death of Garner v. Vanadium Corp. of *979 America, Colo., 572 P.2d 1205 (1977). Absent a clear legislative directive to exclude a portion of an employee's compensation from what is to be considered his wages and thus prevent his recovery of maximum benefits, we will not do so.
Consequently, Filippone's "wages" were $21 per hour. Taking the referee's finding that Filippone's average weekly wages were based upon his earnings on the single day he was injured, by multiplying $21 per hour times the 9½ hours he worked, the amount earned entitled Filippone to the maximum benefits under the statute in effect at the time of his injury. Because he will receive the maximum benefits allowable under the statute, it is not necessary for us to consider whether the Commission properly held Filippone's average weekly wage to be the same as his daily rate of pay.
We set aside the order and remand the cause to the Commission with directions to award Filippone the maximum benefits for the period from January 7, 1976, to March 19, 1976.
BERMAN and VAN CISE, JJ., concur.