846 P.2d 836

**LOU GRUBB CHEVROLET, INC.,**
Petitioner Employer,

**Argonaut Insurance Company,**
Petitioner Carrier,

v.

**The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,**

Michael Pack, Respondent Employee.

**No. 1 CA–IC 91–0033.**

Court of Appeals of Arizona,
Division 1, Department A.

July 23, 1992.

Reconsideration Denied Sept. 22, 1992.

Review Denied March 16, 1993.

**24**

Long, Lester & Lundmark, P.A. by Steven C. Lester, Phoenix, for petitioner employer and petitioner carrier.

Anita R. Valainis, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Ely, Bettini & Ulman by Joseph M. Bettini, Phoenix, for respondent employee.

## OPINION

TOCI, Judge.

The employer and carrier bring this special action review of an Industrial Commission award. The claimant sustained an industrial injury to his right hand and wrist. While claimant was under treatment for the industrial injury, a third party rear ended claimant's automobile in a nonindustrial accident. The automobile accident aggravated the injury to claimant's right hand and wrist. The administrative law judge entered an award granting the claimant further medical and compensation benefits. The award denied the carrier lien rights in the claimant's recovery from the third party.

We conclude the later nonindustrial injury to the hand and wrist is within the range of compensable consequences of the original industrial injury. Also, Ariz.Rev.Stat. Ann. ("A.R.S.") section 23–1023, as interpreted by our decisions, grants no lien rights to the carrier in the claimant's potential recovery against a nonindustrial tortfeasor. Thus, we affirm. We do not consider the remaining arguments raised by the carrier.

## I. ISSUES

(1) Is the aggravation of an industrial injury by a later nonindustrial automobile accident a compensable consequence of the primary industrial injury?

(2) Does the carrier have statutory lien rights in the claimant's recovery for a nonindustrial, third-party tort that did not arise from the same facts as those supporting the award for compensation?

## II. FACTUAL AND PROCEDURAL HISTORY

On September 13, 1988, while employed as a mechanic for petitioner employer, Lou Grubb Chevrolet, Inc. ("Lou Grubb"), the blunt end of the respondent employee's ("claimant's") screwdriver caught in a flywheel and struck the claimant in the right palm and chest. The injury caused right arm pain, numbness, and weakness, which forced the claimant to stop working on September 23, 1988. Petitioner carrier, Argonaut Insurance Company ("Argonaut"), later accepted compensability.

Claimant's symptoms persisted. His treating doctor referred him to Dr. Bobb, a hand specialist, who examined claimant's right arm. Dr. Bobb found clinical evidence of carpal tunnel syndrome, a wrist and hand problem involving the median nerve. On March 6, 1989, Dr. Bobb reported claimant had improved with therapy, and he released claimant for regular work. Argonaut placed claimant on temporary partial disability status and then on regular work status.

However, claimant's wrist problems returned. On May 1, 1989, Dr. Bobb reported a recurrence of claimant's carpal tunnel complaints. A physical therapist treated claimant for his recurrent symptoms about thirty times between March and June 10, 1989. Not long before the automobile accident, claimant had shooting pains and numbness in his right hand and middle finger. On June 9, 1989, Dr. Bobb referred claimant for a nerve conduction study (EMG) of his right hand and wrist. The nerve study was negative.

The following day, claimant's van was rear ended, while he was driving. The impact "wedged" claimant's right wrist in a locked position against the steering wheel. Within half an hour after the accident, claimant's entire right arm was numb. Claimant also sustained neck and back injuries as a result of the accident.

On June 19, 1989, claimant saw Dr. Bobb for the first time after the automobile accident. Claimant told Dr. Bobb that he had been off work "because of injuries associated with an automobile accident." Dr. Bobb reported an aggravation of symptoms in claimant's right hand and wrist, including loss of strength.

On September 27, 1989, Dr. Bobb performed hand and wrist surgery. He reported surgical findings of both median (carpal tunnel) and ulnar nerve compression in the right wrist. His report of October 5, 1989, stated "as a result of [the industrial accident], ... [claimant] has sustained further injury to his ulnar and median nerves and now is at a point where surgical decompression is warranted...." The report concluded: "It should be clearly stated that ... [claimant] has had an exacerbation of a pre-existing industrial injury, which now demands surgical attention...."

Relying on this report, claimant's counsel requested an investigation under A.R.S. section 23–1061(J). He asserted that because the work injury causally contributed to claimant's need for surgery, claimant's aggravated right arm injury was a compensable consequence of the work injury. Argonaut responded by denying liability for the surgery and post-accident disability.

Dr. Rand, an orthopedist retained to examine claimant for the carrier, testified at the administrative hearing. He said that the claimant's medical records predating the automobile accident revealed no objective evidence of a median nerve compression or carpal tunnel syndrome. Furthermore, he said claimant's medical records for the period before the automobile accident did not mention an ulnar nerve problem in the right arm. He testified that if there was any reason for surgery, it was caused by the automobile accident and not the industrial injury.

Claimant's physician, Dr. Bobb, testified that although the plaintiff had improved and was on regular work status, his symptoms returned in May 1989. Because the claimant's symptoms did not improve with treatment, Dr. Bobb considered wrist surgery and discussed it with the claimant *before* the automobile accident. Dr. Bobb testified that the industrial injury predisposed claimant to the aggravation suffered in the automobile accident. He causally related the condition requiring surgery to the original industrial injury. Dr. Bobb gave the claimant a five percent industrial disability for residual wrist symptoms involving the median nerve.

The administrative law judge issued an award for further medical and temporary disability benefits. He concluded that an aggravation or new injury is a compensable consequence of an industrial injury if the industrial injury predisposes a claimant to further injury. He held that Dr. Bobb's testimony satisfied this test and accepted it over Dr. Rand's testimony.

At the hearing, claimant confirmed that he was pursuing a tort claim against the driver of the vehicle that had rear ended him. Argonaut later claimed a lien under A.R.S. section 23–1023 on any monies recovered by the claimant as a result of the nonindustrial accident. Claimant denied that Argonaut had any right to a lien. The administrative law judge agreed and issued a supplemental award denying statutory lien rights. He later affirmed both the Award and Supplemental Award on administrative review. Argonaut then brought this special action.

## III. DISCUSSION

### A. The Range of Compensable Consequences of an Industrial Injury

We follow the principles announced by this court in *Mercante v. Industrial Comm'n*, 153 Ariz. 261, 264, 735 P.2d 1384, 1387 (App.1987); *Dutton v. Industrial Comm'n*, 140 Ariz. 448, 451, 682 P.2d 453, 456 (App.1984); and *East v. Industrial*

*Comm'n,* 137 Ariz. 315, 317, 670 P.2d 420, 422 (App.1983), and affirm the decision of the administrative law judge. The disability and need for treatment resulting from the aggravation of the hand and wrist injury in the automobile accident was a direct and natural consequence of the original industrial injury, entitling claimant to further medical and compensation benefits.

We reach this conclusion for three reasons. First, Dr. Bobb testified that the industrial injury was not stable at the time of the nonindustrial automobile accident. Second, he said that the industrial injury predisposed the claimant toward further injury. Third, there was evidence the industrial injury was a substantial contributing factor to the disability and need for treatment triggered by the later automobile accident. Dr. Bobb testified he would probably have performed surgery for the injuries sustained in the industrial accident had the automobile accident not occurred. Thus, there is substantial evidence to support the conclusion that the aggravation of claimant's hand and wrist injury in the nonindustrial automobile accident is within the range of compensable consequences of the original industrial injury.

Prior cases have adopted Professor Larson's general formula for the range of compensable consequences: "[A] subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the *direct and natural result* of a compensable primary injury." 1 A. Larson, *The Law of Workmen's Compensation,* § 13.11 at 3–503 (1990) (emphasis added), *cited with approval in Mercante,* 153 Ariz. at 264, 735 P.2d at 1387; *Dutton,* 140 Ariz. at 451, 682 P.2d at 456; *O'Donnell v. Industrial Comm'n,* 125 Ariz. 358, 360, 609 P.2d 1058, 1060 (App.1979).

The limits of the phrase "direct and natural result" are not defined in Arizona. We are, however, guided by the cases that hold that if the claimant's conduct is reasonable, a new injury or aggravation is a direct and natural result of an industrial injury if the industrial injury predisposed a claimant to further injury. *E.g., Mercante,* 153 Ariz.

at 265, 735 P.2d at 1388; *Dutton,* 140 Ariz. at 452, 682 P.2d at 457.

In *Mercante,* we interpreted dicta in *East,* 137 Ariz. at 317, 670 P.2d at 422, and said in some cases the link between a primary injury and the subsequent injury may be too weak to be compensable. *Mercante,* 153 Ariz. at 265, 735 P.2d at 1388. However, we held that because the orthopedist connected the ruptured disc to specific traumatic industrial "insults" there was a legally sufficient causal connection to support reopening of the claim. *Id.* at 266, 735 P.2d at 1389.

Thus, *Mercante, Dutton,* and *East* stand for the proposition that the employee's reasonable conduct in causing a later nonindustrial injury does not relieve the employer of liability if the later injury is the "direct and natural result" of the compensable work injury. Put in another way, a later injury, whether an aggravation of the original injury or a new and distinct injury, is a "direct and natural" result of a compensable primary injury if the industrial injury predisposes a claimant to further injury.

However, that is not the end of the inquiry. While workers' compensation laws are generally to be construed liberally in favor of the employee, a line must be drawn somewhere in cases involving later injuries. Otherwise, an employer who has discharged his obligation as to the original injury will become an insurer of *every* recurrence of the original injury. Thus, there must be a substantial causal relationship between the industrial injury and the later disability or need for treatment. *See Mercante,* 153 Ariz. at 265, 735 P.2d at 1388. If there is no such relationship, the later injury is beyond the range of compensable consequences of the primary industrial injury.

B. *The Causal Relationship Between the Industrial Injury and The Later Injury Sustained in the Automobile Accident*

We now apply the principles discussed in *Mercante, Dutton,* and *East* to this case. Dr. Bobb testified that the in-

dustrial injury to the median nerve in the wrist predisposed claimant to reinjury of the wrist in the automobile accident. According to Dr. Bobb's testimony, the automobile accident "took each of those symptoms ... and ... aggravated them." Thus, because the claimant's wrist was already weakened by the work accident, the disability and treatment resulting from the reinjury of the median nerve in the wrist was clearly the "direct and natural" result of the industrial injury.

■ The next issue is whether the causal relationship between the industrial injury and the need for treatment triggered by the automobile accident is strong enough to be the legal consequence of the industrial injury. *East* tells us that if the result of the work injury is a stabilized condition that would have remained that way but for the subsequent automobile accident, the later injury cannot "legally be the consequence of the original injury." *Id.* 137 Ariz. at 317, 670 P.2d at 422. *See also Town of Hudson v. Wynott,* 128 N.H. 478, 522 A.2d 974, 976 (1986) (if the worker's underlying condition has stabilized at the time of the accident, the subsequent accident is more likely to be beyond the range of compensable consequences); *but see, Dutton,* 140 Ariz. at 450–51, 682 P.2d at 455–56 (later nonindustrial aggravation of stabilized work injury which weakened disc in back and increased susceptibility to injury was within range of compensable consequences).

Conversely, if the industrial injury has not stabilized, the later injury is more likely to be within the range of compensable consequences. Although not a factor in all cases, the stability of the injury is a significant factor in determining the range of compensable consequences in this case.

Dr. Bobb testified, in substance, that claimant's work injury to the median nerve in the right wrist was not stable at the time of the automobile accident. The injury would have required surgery even if the automobile accident had not triggered the need for surgery. Dr. Bobb testified that claimant's symptoms returned in May, about one month before the automobile ac-

cident. Because claimant's symptoms recurred, Dr. Bobb discussed surgery with claimant before the automobile accident. Dr. Bobb testified "the medical approach to [claimant's] hand was leading us toward surgery right up until the time of the accident." He said that the condition requiring surgery was "related back" to the industrial accident.

Although Dr. Bobb's testimony deviated from the written record, this merely created a credibility question for the administrative law judge. We must defer to his acceptance of Dr. Bobb's testimony. *E.g., East,* 137 Ariz. at 317, 670 P.2d at 422. Dr. Bobb's testimony clearly established a substantial causal relationship between the industrial injury and the reinjury or aggravation sustained in the automobile accident.

The ulnar nerve injury is a more troublesome question. Dr. Bobb conceded that his office notes about the claimant's treatment never mentioned an ulnar nerve problem. He also testified that the ulnar nerve symptoms were "smoldering" before the accident and the accident "greatly aggravated" them. In addition, he attributed the ulnar nerve residual impairment to the automobile accident rather than the industrial injury. Thus, one can argue that the link is too weak between the industrial injury to the ulnar nerve and the aggravation of this injury caused by the automobile accident. However, we reject this argument for the following reasons.

Dr. Bobb did testify that soon after the industrial injury, claimant began to develop reflex sympathetic dystrophy, a medical condition that commonly involves an injury to the ulnar nerve. He also explained that the physical therapist's notes documented these symptoms. Furthermore, he testified that when he operated, he saw evidence of compression of the ulnar nerve. He said that the surgical findings "were consistent with [his] clinical findings all along, both *before* and after the car accident." Finally, he testified that the accident took *each of claimant's symptoms, and aggravated them.*

■ Although we might have reached a different conclusion, we defer to the find-

ings of the administrative law judge. He must resolve the issue of medical causation by considering any reasonable inference that can be drawn from the medical testimony. *East,* 137 Ariz. at 317, 670 P.2d at 422. Here, the industrial contribution to the ulnar nerve injury in the wrist was not as strong as the contribution to that injury from the automobile accident. However, we cannot say, as we did in *East,* that the later ulnar nerve injury was not the legal consequence of the original work injury.

■ In the current case, the administrative law judge did not apply the *East* test. Argonaut, however, urged the administrative law judge to apply an incorrect test. Under these circumstances, we will affirm if the record would have supported the award under the correct test. *Cf. Jaimes v. Industrial Comm'n,* 163 Ariz. 307, 310–11, 787 P.2d 1103, 1106–07 (App.1990) (not-ing alternative standard of review but applying independent judgment to determine if record supported award). Here, the record, taken in its entirety, supports the award.

We are not persuaded by Argonaut's focus on the negligent conduct of the nonindustrial third party as a superseding cause of claimant's injury. The issue is not whether third-party conduct is negligent or even intentional, but whether the later injury or aggravation sustained as a result of such conduct is the substantial, direct, and natural result of a compensable work injury. If such relationship exists between the industrial injury and the later injury, the claimant is entitled to benefits unless the later injury was a result of claimant's unreasonable conduct. Here, the automobile accident—regardless of how one characterizes the conduct of the third party causing it—is simply a later nonindustrial event. It is no different than those cases in which the industrial injury, predisposing a claimant to further injury, is sufficiently related to the nonindustrial event so as to be compensable. *See, e.g., Klosterman v. Indus-*

*trial Comm'n,* 155 Ariz. 435, 747 P.2d 596 (App.1987) (later injury sustained while playing frisbee); *Mercante,* 153 Ariz. at 264, 735 P.2d at 1387 (later injury occurred when getting out of bed); *Dutton,* 140 Ariz. at 451, 682 P.2d at 456 (later injury suffered while drilling a safe).

Claimant cites Larson and argues "[t]he issue ... is *exclusively* the medical issue of causal connection between the primary injury and the subsequent medical complications" unless a claimant's unreasonable conduct causes an aggravation or new injury. Larson, § 13.11(a) at 3–517 to –518.

Although we recognize Professor Larson's authority and conflicting holdings from other jurisdictions,[1] we reject such a broad rule. We do this because Larson does not take into account the *East* and *Mercante* requirement that there be a *substantial* relationship between the work injury and the later disability or need for treatment. Even if a claimant's conduct is reasonable, the relationship between an industrial injury and a new injury or aggravation may, as a matter of policy, be too weak to be within the range of compensable consequences. However, here the circumstances are different. There is a substantial link between the primary work injury and the treatment and disability resulting from the later injury sustained in the automobile accident.

## C. A.R.S. § 23–1023 Does Not Grant Lien Rights to the Carrier in the Claimant's Potential Tort Recovery From a Nonindustrial Tortfeasor

■ We hold that, as interpreted by *Talley v. Industrial Comm'n,* 137 Ariz. 343, 670 P.2d 741 (App.1983), A.R.S. section 23–1023(C) confers on the carrier no lien rights against the claimant's recovery from a negligent, nonindustrial third party. The carrier does not support its argument that the denial of lien rights is a denial of equal protection under the federal and state con-

1. *Compare, e.g., Warpinski v. Indust. Ins. System,* 103 Nev. 567, 747 P.2d 227 (1987) (employer liable if causal nexus between final condition and industrial injury; exact manner of second injury immaterial when industrial injury made

condition more susceptible to further injury) *with D'Angelo Plastering Co. v. Isaac,* 393 So.2d 1066 (Fla.1981) (intervening negligence superseding cause).

stitutions with any citation of authority. We, therefore, refuse to consider it. *See Paros v. Hoemako Hosp.*, 140 Ariz. 335, 338, 681 P.2d 918, 920 (App.1984).

In *Talley*, the claimant suffered a work injury to his back. Despite the pain, he continued to work that day. The following day, claimant reinjured his back in a minor, nonindustrial automobile accident. Later, he sought medical treatment for a low back condition and sued the alleged negligent third party for damages. He also claimed compensation benefits. The carrier denied the claim on the ground the medical treatment and disability directly resulted from the automobile accident. The claimant protested. The Industrial Commission found the industrial claim to be compensable and issued an award for benefits. This court affirmed the award on appeal.

The carrier, Argonaut, learned that the claimant had settled with the insurer of the driver involved in the nonindustrial automobile accident. Argonaut then issued a notice of claim status denying responsibility for benefits because the claimant had compromised a claim against a third-party tortfeasor without its approval. We rejected Argonaut's position. We held "the plain import of A.R.S. section 23–1023 is to allow carrier subrogation and settlement approval rights in the limited circumstance where a third-party tortfeasor injures an employee in the course and scope of his employment." 137 Ariz. at 346, 670 P.2d at 744.

We adhere to our decision in *Talley* and again reject Argonaut's position. According to *Talley*, the carrier's lien in A.R.S. section 23–1023 applies only to third-party torts arising from the same facts as those supporting the compensation award. Here, because the alleged nonindustrial, third-party tort arose from facts unrelated to those upon which the commission based the compensation award, the carrier has no lien.

The carrier argues that *Talley* stands for the proposition that the claimant cannot recover benefits from both the employer and the nonindustrial tortfeasor. It contends that the claimant in *Talley* conceded the workers' compensation benefits should

be credited with the recovery from the third-party tortfeasor in order to avoid a double recovery. The decision in *Talley*, however, did not rest on this concession. On the contrary, *Talley* held that the initial award, affirmed in favor of claimant, "did not hold the carrier responsible for the effects of the separate automobile accident...." *Talley*, 137 Ariz. at 347, 670 P.2d at 745.

## D. The Possibility of a Double Recovery by the Claimant Does Not Give Rise to a Lien

■ The carrier argues that disallowing a lien may result in a double recovery for the employee. We agree. However, we follow our decision in *Sunstate Equip. Corp. v. Industrial Comm'n*, 135 Ariz. 477, 662 P.2d 152 (App.1983). There, the employee was injured by an uninsured motorist while driving his employer's automobile in the course and scope of his employment. The employee was entitled to uninsured motorist benefits under his automobile policy. The employer claimed a lien against the uninsured motorist proceeds for workers' compensation benefits paid to the employee. We held that because the clear and unambiguous language of A.R.S. section 23–1023 did not grant lien rights against uninsured motorist proceeds, it was "legally immaterial" whether the denial of lien rights might "result [in] a double recovery for an employee and increased premiums for the employer...." *Id.*, 135 Ariz. at 479–80, 662 P.2d at 154–55.

We reluctantly conclude that because A.R.S. section 23–1023, as interpreted by *Talley* and *Sunstate*, does not give a carrier lien rights in claimant's potential tort recovery from a nonindustrial tortfeasor the possibility of a double recovery is "legally immaterial." We also observe that, historically, the automatic assignment of an employee's third-party *industrial* tort claim to the carrier has proved to be a statute of limitations trap for both litigants and lawyers. The extension of the statute to third-party *nonindustrial* torts would compound an existing problem. Although we recognize the equities in Argonaut's

position, we decline to depart from precedent and create new lien rights. It is the function of the legislature to correct the problem if it so desires.

### CONCLUSION

We affirm the administrative law judge's award. We conclude that the later nonindustrial injury sustained in the automobile accident was within the range of compensable consequences of the primary industrial injury. In addition, we hold that the carrier's lien claim is precluded by our decision in *Talley.*

GRANT, P.J., and LANKFORD, J., concur.