PITTMAN, Judge.
Eddie Kent (“the employee”) sued Landstar Ranger a/k/a Ranger Transportation (“the employer”) for workers’ compensation benefits, alleging that he was injured in the fine and scope of his employment; and he requested benefits for injuries to both his right and left upper extremities. Following the presentation of ore tenus evidence, the trial court found that the employee suffered a 10% permanent-partial disability and awarded the employee benefits and ordered the employer to pay “all existing and unpaid necessary and reasonable medical expenses.” The employer filed a post-judgment motion, which the trial court denied.
This court will not reverse a judgment of the trial court in a workers’ compensation case if the judgment is based on factual findings that are supported by “substantial evidence.” Section 25-5-81(e)(2), Ala.Code 1975. Substantial evidence is “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus. Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).

Compensability of LejF-Shoulder Injury

The employer does not dispute that the employee’s injury to the right upper extremity is compensable. The employer argues that the injury to the left upper extremity, more specifically, a torn rotator cuff in the left shoulder, is not a work-related injury. Following the injury to the right shoulder, the employee underwent physical therapy. The employee testified that he injured his left shoulder during his physical therapy. The employee concedes that the left-shoulder injury did not occur while he was working. The employee ar *324 gues that this injury is a compensable injury pursuant to the “successive-compen-sable-injury” test.
Our supreme court adopted the successive-compensable-injury test in Ex parte Pike County Commission, 740 So.2d 1080 (Ala.1999). The court explained the test as follows:
“When determining whether a successive injury is compensable, the general rule is that ‘[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to [the] claimant’s own intentional conduct.’ 1 Larson, [Larson’s Workers’ Compensation Law], § 13.00 [(1998)]. In applying this rule to a factually similar case, the Supreme Court of Appeals of West Virginia held:
“ ‘[I]f a worker’s compensation claimant shows that he received an initial injury which arose out of and in the course of his employment, then every normal consequence that flows from the injury likewise arises out of the employment. If, however, a subsequent aggravation of the initial injury arises from an independent intervening cause not attributable to the claimant’s customary activity in light of his condition, then such aggravation is not compensable.
“Wilson v. Workers’ Compensation Comm’r, 174 W.Va. 611, 616, 328 S.E.2d 485, 490 (1984); see also Lou Grubb Chevrolet, Inc. v. Industrial Comm’n, 174 Ariz. 23, 26, 846 P.2d 836, 839 (Ariz.App.1992) (‘[An] employee’s reasonable conduct in causing a later nonindustrial injury does not relieve the employer of liability if the later injury is the “direct and natural result” of the compensable work injury.’). Thus, ‘a subsequent injury, whether an aggravation of an original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury.’ 1 Larson, supra, § 13.11.”
740 So.2d at 1084.
The employee in Pike County Commission had a series of work-related back injuries; he filed the action at issue in that opinion after lifting his 12-pound baby at home. 740 So.2d at 1082. The supreme court affirmed the trial court’s finding that the employee’s injury after lifting the baby was a compensable injury, because “[Gifting a 12-pound baby is an activity that is ‘customary in light of [the employee’s] condition.’ Wilson [v. Workers’ Comp. Comm’n], 174 W.Va. [611] at 616, 328 S.E.2d [485] at 490 [(1984)].” 740 So.2d at 1084. The supreme court has also stated, “Under the ‘successive-compensable injury’ test, the issue is not whether the primary injury caused the second [non-work-related] accident.” Ex parte Dunlop Tire Corp., 772 So.2d 1167, 1171 (Ala.2000) (emphasis added). See also Wal-Mart Stores, Inc. v. Kennedy, 799 So.2d 188, 194-96 (Ala.Civ.App.2001) (applying the successive-compensable injury test and affirming the trial court’s finding that a right-hip replacement was the “natural and direct” result of a left-hip injury); and Labinal, Inc./Globe Motors v. Alphord, 820 So.2d 104, 112-13 (Ala.Civ.App.2001) (Crawley, J., concurring in the result, joined by Thompson and Murdock, JJ., and advocating the application of the successive-com-pensable injury test for what they conclude is an injury not occurring at work).
Dr. Donald Slappey, an orthopedic surgeon, treated the employee for his left rotator-cuff injury. He testified that the employee, after injuring his right shoulder at work, could have overcompensated with *325 his left shoulder muscles in his everyday activities and in his physical therapy for the right rotator-cuff injury. Dr. Slappey opined that such overuse of the left shoulder could cause such a left rotator-cuff injury.
We conclude that the left rotator-cuff injury occurred while the employee was performing “activity that would be customary in light of his condition.” Ex parte Pike County Comm’n, 740 So.2d 1080, 1084, quoting Wilson v. Workers’ Compensation Comm’r, 174 W.Va. 611, 616, 328 S.E.2d 485, 490 (1984). We further conclude that the trial court properly found that the left rotator-cuff injury is compensable because it is a “natural and direct result” of the right-shoulder injury. Therefore, the successive-compensable injury test applies, and the trial court properly found the left-shoulder injury to be compensable. As stated above, Dr. Slap-pey gave his opinion that the employee’s overuse of his left shoulder muscles following the right-shoulder injury was a possible cause of the employee’s left rotator-cuff injury. Therefore, we conclude that Dr. Slappey’s testimony is substantial evidence that the left rotator-cuff injury is a “natural and direct result” of the right-shoulder injury.

Average Weekly Wage

The employer argues that the trial court incorrectly calculated the employee’s average weekly wage. The trial court found that the employee’s average weekly wage is $572. The employer argues that the average weekly wage is $181.85 because, it contends, the trial court improperly included tax-deductible expenses incurred by the employee in its average weekly wage computation. The employee contends that those tax-deductible expenses relate only to his truck and not to himself personally; therefore, the employee maintains, those truck-related expenses are properly included in the computation of his average weekly wage.
Section 25-5-1(6), Ala.Code 1975, states, in pertinent part:
“WAGES OR WEEKLY WAGES. The terms shall in all cases be construed to mean ‘average weekly earnings’, based on those earnings subject to federal income taxation and reportable on the Federal W-2 tax form.... ”
The employee’s W-2 form reflects the income he receives from his employer for driving the truck. The employee also flies a 1099-Form because he receives additional income for leasing to the employer his truck, which he drives while working for the employer. The employee deducts expenses for operating the truck including fuel, repairs, and depreciation from his income tax returns. The record indicates that on his latest income tax return his deductions for operating the truck exceeded the lease payments paid by the employer. The employer argues that the excess deductions should then offset his W-2 income as well.
The employer relies on Reynolds v. Nix, 630 So.2d 458 (Ala.Civ.App.1993). Nix was an independent contractor who sold wood to Reynolds Wood Products and he was injured while working for Reynolds. 630 So.2d at 458. The trial court determined Nix’s average weekly wage without deducting the “production costs” or expenses Nix incurred. Id. This court reversed, noting that Reynolds presented evidence of the expenses Nix incurred in selling wood, and concluded:
“In calculating compensation, [the court is required to] add to earnings fringe benefits that are part of the wage contract that could be converted to the cash equivalent. See Ala.Code 1975, § 25-5-57(b); North River Ins. Co. v. Purser, 608 So.2d 1379 (Ala.Civ.App.1992). Ac *326 cordingly, there should be a reduction for any ‘production costs.’ ”
630 So.2d at 459.
The Reynolds case does not answer the question presented by this case. Nix was an independent contractor. Here, the employee is a regular employee who receives a W-2 from the employer. The employee also leases his truck, which he drives while working for the employer. Alabama case-law has not addressed the issue of what is to be included in the average weekly wages of an employee who receives a salary from the employer reportable on the W-2 form and, in addition, leases equipment (here, a truck) used in working for the employer and reports that income on a 1099 form.
The Colorado Court of Appeals addressed this same issue in Filippone v. Industrial Commission of Colorado, 41 Colo.App. 322, 590 P.2d 977 (1978). Filip-pone worked for Western Paving Construction Company, which had hired him to use his own truck to haul materials used at their work sites. He was paid $21 per hour by Western Paving. He was injured while working for Western Paving and filed a claim for workers’ compensation benefits. The Colorado State Industrial Commission determined Filippone’s average weekly wage based on $7 per hour because Filippone testified that about $14 per hour covered the expenses of operating the truck. Filippone appealed to the Colorado Court of Appeals. The court of appeals reversed the commission’s decision. The court relied on the statutory definition of “wages,” which did not provide for a deduction of expenses incurred by an employee such as Filippone. 41 Colo.App. at 324, 590 P.2d at 978. The court also relied on Travelers Insurance Co. v. Curtis, 223 F.2d 827 (5th Cir.1955), and quoted the following language from that case:
“ ‘[0]nee a person is held to be an employee, his “wages” are the amounts he is paid by his employer for his work, not his “net profit” from the employment. We think it would not be contended that a carpenter or mechanic required to provide his own transportation to and from work and furnish his own tools should be required to prove and deduct automobile expenses and the cost of tools in order to establish his wages from employment.’ ”
41 Colo.App. at 324, 590 P.2d at 978, quoting Travelers Ins. Co., 223 F.2d at 831.
We agree with the holding of Filip-pone, and conclude that the employee’s average weekly wage does not include the income or loss, as the facts indicate here, he receives from the lease of the truck to the employer. Although this court’s opinion in Reynolds requires “production costs” to be deducted from an independent contractor’s income for purposes of determining wages, the Reynolds court stated that the issue in that case “is whether Nix’s ‘production costs’ should have been deducted in calculating his weekly wage, because he is an ‘independent contractor’ and not an ‘employee’.” 630 So.2d at 458. The distinction this court made between an independent contractor and an employee is significant because it indicates that this court would never look at an employee’s “costs” of doing the job in determining the weekly wage. In other words, the wages of an employee, as compared to an independent contractor, in Alabama is defined pursuant to § 25-5-1(6), which includes only the amount on the W-2. Therefore, we conclude that the lease income the employee received from the employer or the loss sustained by the employee is not included in his weekly wage. The trial court’s calculation of the employee’s weekly wage is affirmed.

*327
Medical Expenses

The employer last argues that the trial court erred by ordering it to pay all of the employee’s unpaid reasonable and necessary medical expenses. The employer argues that the employee did not submit any evidence regarding the amount or reasonableness of the expenses. We disagree. The record indicates that the unpaid medical expenses relate to the employee’s left-shoulder injury, which, as stated above, is a compensable injury. The testimony of Dr. Slappey, the employee’s treating physician for the left-shoulder injury, supports a finding that his treatment and subsequent bills are reasonable and necessary. See Dun & Bradstreet Corp. v. Jones, 678 So.2d 181, 187 (Ala.Civ.App.1996) (holding that physician’s testimony is substantial evidence indicating that medical expenses are reasonable and necessary).
Therefore, the trial court’s judgment is affirmed.
AFFIRMED.
YATES, P.J., and CRAWLEY and THOMPSON, JJ., concur.
MURDOCK, J., dissents.