NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DARRELL HICKMAN,
*Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF
ARIZONA,
*Respondent*,

SOUTHWEST FOOD SERVICE
EXCELLENCE, LLC,
*Respondent Employer*,

TECHNOLOGY INSURANCE COMPANY,
*Respondent Carrier*.

No. 1 CA-IC 15-0074
FILED 7-7-2016

Special Action - Industrial Commission
ICA No.  20121-160404
INSCA No. 8444851
The Honorable Jonathan Hauer, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Darrell Hickman, Flagstaff
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent ICA*

Jardine, Baker, Hickman & Houston, PLLC, Phoenix
By Terrence Kurth
*Counsel for Respondent Employer/Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Randall M. Howe and Judge Andrew W. Gould joined.

---

J O H N S E N, Judge:

¶1　　　　This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review denying Darrell Hickman's hearing request and bad-faith claim. For the following reasons, we affirm the award.

### FACTS AND PROCEDURAL BACKGROUND

¶2　　　　Hickman sustained an industrial injury in March 2012 and underwent surgery at a Flagstaff hospital; the Veterans Administration ("VA") paid his hospital and surgical expenses. The ICA found his injury was compensable, but eventually closed his claim with an unscheduled permanent partial disability. In exchange for a payment of $27,000 from the insurance carrier, Hickman agreed to settle his subsequent claim for loss of earning capacity. Hickman certified he understood and agreed with the agreement, and the Administrative Law Judge ("ALJ") approved the settlement in November 2014.

¶3　　　　In February 2015, Hickman filed a request for hearing pursuant to Arizona Revised Statutes ("A.R.S.") section 23-1061(J) (2016), alleging nonpayment of benefits.[1] His request made various allegations, including "breach of contract [and] failed payment of medical bills." The following month, Hickman filed a complaint alleging bad faith and/or unfair claim processing practices; the complaint made many of the same

---

[1]　　　　Absent material revision after the relevant date, we cite the statute's current version.

allegations recounted in his earlier request for hearing. By agreement, the ALJ held a combined hearing on Hickman's bad-faith claim and request under A.R.S. § 23-1061(J). After the hearing, the ALJ denied the hearing request and the bad-faith claim. Hickman timely sought review, but the ALJ summarily affirmed the decision. This special action followed.

¶4 This court has jurisdiction pursuant to A.R.S. §§ 23-951(A) (2016), 12-120.21(A)(2), (4) (2016) and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

### A. Legal Principles.

¶5 Hickman's request for hearing cited A.R.S. § 23-1061(J), which states in relevant part, "The [ICA] shall investigate and review any claim in which it appears to the commission that the claimant has not been granted the benefits to which such claimant is entitled." Hickman's bad-faith claim cited A.R.S. § 23-930 (2016) and Arizona Administrative Code ("A.A.C.") R20-5-163. Under § 23-930(A), the ICA has jurisdiction over complaints alleging bad faith and unfair claims processing practices by insurance carriers. Bad faith is defined by A.A.C. R20-5-163 to include unreasonably delaying, denying or underpaying benefits. A.A.C. R20-5-163(A). The same rule defines "unfair claim processing practices" to include failing to act reasonably and promptly upon communications from an unrepresented client. A.A.C. R20-5-163(B)(3).

¶6 When reviewing findings and awards of the ICA, we defer to the ALJ's findings of fact and consider the evidence in the light most favorable to sustaining the award. *Sun Valley Masonry, Inc. v. Indus. Comm'n*, 216 Ariz. 462, 463-64, ¶ 2 (App. 2007). We will not set aside an award that is reasonably supported by evidence in the record. *Delgado v. Indus. Comm'n*, 183 Ariz. 129, 131 (App. 1994).

### B. VA Reimbursement.

¶7 As noted above, the VA paid for Hickman's surgery following his industrial injury. In the agreement settling Hickman's loss-of-earning-capacity claim, the carrier agreed to "ensure that the Veterans Administration is reimbursed" for Hickman's treatment. During the hearing before the ALJ, Hickman testified he understood that the carrier had yet to reimburse the VA, and he was concerned the outstanding obligation might adversely affect his relationship with the VA. Counsel for the carrier agreed to provide evidence that the carrier had reimbursed the

VA, and the ALJ ordered the carrier to provide "some confirmation of what has been paid by the carrier to the VA."

**¶8** Based on evidence submitted after the hearing, the ALJ determined that the carrier had reimbursed the hospital, not the VA, so that the hospital had been paid twice for the services it rendered. In his decision and award, the ALJ ordered the carrier to inform the VA that "it may seek reimbursement for its expenses from [the hospital]" and also to "inform the VA that defendant carrier is the primary debtor for medical treatment expenses associated with the subject injury."

**¶9** On appeal, Hickman does not argue he is somehow at risk for the amount the hospital should reimburse the VA. Having ascertained that the carrier reimbursed the hospital rather than the VA for Hickman's expenses, the ALJ did not abuse his discretion in ordering the carrier to inform the VA that it could seek reimbursement from the hospital.

## C. California Child Support.

**¶10** At the time of the settlement, Hickman was subject to two child-support orders, one from California and one from Arizona. When the carrier cut the settlement check for Hickman, it withheld half of the settlement amount and sent it to the Arizona child-support clearinghouse but paid nothing to California. At the hearing, Hickman argued the carrier should have paid half of the withheld amount to Arizona and half to California. Counsel for the carrier argued the carrier may have been unaware of the California lien but argued that nothing prevented Hickman from paying some amount to California from the balance of his settlement check.

**¶11** The ALJ found no evidence that the carrier was directed to withhold California child support. Moreover, the ALJ concluded that child-support withholding is not a "benefit" for which a claim for bad-faith claims processing may be brought pursuant to A.A.C. R20-5-163(A)(2).

**¶12** Hickman argues the insurance carrier should have known he had child-support obligations in California and in Arizona and should have divided the withheld amount evenly between both states.

**¶13** A carrier may be liable for bad-faith claims handling when it intentionally and unreasonably denies or fails to process a claim. *Merkens v. Fed. Ins. Co.*, 237 Ariz. 274, 277, ¶ 14 (App. 2015). The ALJ did not err, however, in concluding child-support withholding is not a benefit subject to a bad-faith claim under R20-5-163. Moreover, the parties' settlement

agreement contains no references to the California child-support order. Hickman testified the carrier should have known to distribute funds to California because payroll checks from his employer reflected wage garnishments for California child support. But Hickman offered no evidence to support his assertion that his employer's knowledge of the California order should be imputed to the carrier. Further, Hickman had the opportunity to pay the California child-support order with the settlement check he received and chose not to do so. Thus, the ALJ did not err in denying Hickman's claims based on the carrier's failure to pay some portion of the withheld amount to California child-support authorities.

**D.      Alleged Lost Earnings.**

**¶14**        Hickman also argued he was entitled to more than the $27,000 he received in the settlement to compensate for his lost earning capacity. At the hearing, he asserted that he was entitled to be paid for another three months of lost income because he missed three months of work during the time the settlement agreement was being negotiated. The ALJ did not abuse his discretion in denying Hickman's contention that he was due any additional sum for lost earnings beyond what he agreed to accept in the settlement agreement.

**E.      Delayed Appointment and Pain Questionnaire Miscalculation.**

**¶15**        Hickman testified that although he arrived 30 minutes early for an independent medical examination ("IME"), the physician who was to examine him was 30 to 40 minutes late. Hickman also testified the doctor submitted false evidence when he miscalculated Hickman's pain questionnaire at 92 when the actual score was 97. Hickman testified he did not know whether the miscalculation would affect his permanent disability rating.

**¶16**        The ALJ did not abuse his discretion in finding Hickman did not provide any evidence to link the pain score to his benefits and that he had failed to prove the physician's tardiness constituted bad faith under A.A.C. R20-5-163.

**F.      Travel Expense Reimbursement.**

**¶17**        Hickman argued he was not timely reimbursed for the expenses he incurred in traveling to two IME appointments. At the hearing, he testified that when he did not receive his expense check before he needed to travel to one appointment, his lawyer advanced him the money. He testified he did not know whether it was his own lawyer or opposing

counsel who "dropped the ball" on timely payment. As for the second occasion, he testified opposing counsel arranged for his expense check to be waiting for him at the physician's office.

¶18            The ALJ found that although the insurance carrier did not pay Hickman's travel expenses in advance as required by A.A.C. R20-5-116, the violation did not constitute bad faith because it did not create an intentional and unreasonable delay, denial, underpayment or termination of benefits. The ALJ did not err in making these findings.

## G.      Alleged False Checks.

¶19            At the hearing, Hickman showed the ALJ copies of two checks he received from his lawyer in July 2013, both showing payment of $228.03 (less $57.01 in attorney's fees). Hickman testified the checks were "fraudulent" because the associated paperwork falsely indicated that $144 had been deducted from each check for child support, but child-support records did not show those payments. Hickman contended the money supposedly withheld for child support had not been delivered to state clearinghouse authorities.

¶20            Given Hickman's failure to offer evidence to support his contention that the funds supposedly withheld for child support were not transferred to the clearinghouse, the ALJ did not err in finding that Hickman failed to prove that support payments "were not properly withheld."

## H.      Alleged Taking Advantage of an Unrepresented Applicant.

¶21            Hickman argued at the hearing that the insurance carrier and its counsel engaged in "bait-and-switch" tactics that resulted in unfair claim processing practices. He argues the carrier's counsel was aware of the California child-support order and took advantage of him in negotiating the settlement agreement. The ALJ concluded Hickman offered insufficient evidence to support this allegation and to the contrary, "[Hickman's] negotiations with defendants suggest the opposite." We note that when Hickman joined in submitting the settlement agreement to the ALJ for approval, he certified, "I have not been unduly pressured, . . . there is no fraud or coercion involved in reaching such Settlement, and . . . I have been fully informed as to the benefits and consequences of such Settlement." The ALJ did not abuse his discretion in finding the insurance carrier and its counsel did not engage in unfair claim processing practices.

**CONCLUSION**

¶22       For the foregoing reasons, we affirm the award.



Ruth A. Willingham · Clerk of the Court
FILED: AA